**Kenneth M. ZELAZNY,
Plaintiff–Appellant,**

**v.**

**Richard LYNG, Secretary of Agriculture, et al., Defendants–Appellees.**

**No. 87–2646.**

United States Court of Appeals,
Seventh Circuit.

Argued May 17, 1988.

Decided July 28, 1988.

George C. Pontikes, Foss, Schuman, Drake & Barnard, Chicago, Ill., for plaintiff-appellant.

Ann L. Wallace, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant, Kenneth M. Zelazny, appeals from the district court's order dismissing his suit under the doctrine of laches. We affirm.

## Background

In May 1978, Mr. Zelazny held the position of Cook–DuPage County Executive Director (CED) of the Agricultural Stabilization and Conservation Service (ASCS). The ASCS is an organization within the United States Department of Agriculture responsible for the implementation of various agricultural programs such as crop price support payments and conservation. The Cook–DuPage County Office is part of a national network of such local offices within the ASCS. As CED of a local office, Mr. Zelazny was the supervisor of ASCS programs in Cook and DuPage Counties, Illinois. He was selected for this position by the County Committee, a group elected by county farmers who participate in ASCS programs. Supervising the actions of the County Committee and the CED are the State Committee and the State Executive Director. The State Executive Director and the members of the State Committee are appointed by the Secretary of Agriculture.

On May 19, 1978, Mr. Zelazny was informed by the County Committee that his performance was deficient in a number of key areas. He further was informed that he would be downgraded and given some additional training with a six-month opportunity to improve his performance. On November 17, 1978, Mr. Zelazny was notified that he was being terminated as of December 1, 1978 because his performance continued to be unsatisfactory. This notice of termination stated that he could appeal the action to the State Committee within ten calendar days. Mr. Zelazny filed an appeal with the State Committee on November 22, 1978. He requested review of the County Committee's decision and stated the reasons why he believed that his separation was not justified. He did not request a personal appearance or a hearing. On December 6, 1978, the State Committee informed Mr. Zelazny that it had considered his appeal but concurred in the decision of the County Committee to terminate his employment.

More than two years later, on March 20, 1981, Mr. Zelazny requested that the State Committee rescind its 1978 decision on the ground that it was made without a personal appearance. He further requested a hearing before the State Committee to present the reasons why he felt that his removal was unjustified. On September 16, 1981, the State Committee denied the request. It responded that, although Mr. Zelazny was entitled to a personal appearance, he had not requested one and therefore none of his rights had been violated.

More than five years later, on November 7, 1986, Mr. Zelazny filed the present civil action. The complaint sought a declaratory judgment that Mr. Zelazny was entitled to appear personally before the State Committee. The complaint also sought an order requiring the State Committee to rescind its decision and to schedule a new hearing at which Mr. Zelazny could appear personally. On February 23, 1987, the government filed a motion to dismiss on the ground of laches. Despite two extensions of time, Mr. Zelazny did not respond to the government's motion. On June 15, 1987, the district court issued an order granting the government's motion and dismissing the action. Thereafter, Mr. Zelazny filed a motion to reconsider, which the district court denied.

## Discussion

■ The defense of laches is an equitable doctrine. It is concerned principally with the fairness of permitting a claim to be enforced. "It is unlike [statute of] limitation[s], which is based merely on time. Rather, laches is based upon changes of conditions or relationships involved with the claim." *Lingenfelter v. Keystone Consolidated Indus.*, 691 F.2d 339, 340 (7th Cir.1982) (per curiam). Laches consists of two elements: (1) a lack of diligence by the plaintiff, and (2) prejudice resulting from the delay. Under this two-prong approach, the plaintiff bears the burden of explaining his delay in bringing suit. "If the delay is inexcusable, then the defendant must show prejudice." *Id.*

■ In this case, the district court determined that Mr. Zelazny's delay of almost eight years from the accrual of the cause

of action to the filing of his suit was unreasonable. *Zelazny v. Lyng,* No. 86–C–8687, mem. op. at 5 (E.D.Ill. June 15, 1987) [hereinafter Mem. op.] [available on WESTLAW, 1987 WL 12664]; R. 26 at 5. During the course of this litigation, Mr. Zelazny has never offered an explanation for his delay in filing suit nor does he now challenge the district court's determination that inexcusable delay has been established as a matter of law. Instead, his sole argument on appeal is that the government has not demonstrated prejudice resulting from the delay. Because Mr. Zelazny does not dispute his lack of diligence in this matter, we turn directly to the prejudice prong of the inquiry.[1]

### 1.

In addressing the question of prejudice, the district court stated that, in the absence of any explanation for the delay in bringing suit, prejudice can be presumed. *Id.* This statement is not without support in the case law. In *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1009 (7th Cir.1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 420 (1971), the court concluded that an unreasonable and inexcusable delay by a patentee in bringing an infringement suit raises a presumption that the alleged infringer had been prejudiced by the delay. In *Lingenfelter,* a suit for reinstatement under the Veteran's Reemployment Rights Act, the court cited *Baker* as authority for this presumption of prejudice. 691 F.2d at 340. However, faced with the plaintiff's vigorous protestations that the presumption was

improper, the court declined to decide the case on that basis. Instead, the court held only that, on the record before it, the district court's determination of actual prejudice was not an abuse of discretion. *Id. Wilmes v. United States Postal Service,* 810 F.2d 130 (7th Cir.1987), is similar. There, the court stated that it *would* presume prejudice but nonetheless went on to hold that it agreed with the district court's determination of actual prejudice. *Id.* at 134–35; *cf. Powell v. Zuckert,* 366 F.2d 634, 639 (D.C.Cir.1966) (short delay in bringing suit was explained so prejudice could not be presumed); *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1260 (3d Cir.1974) (prejudice presumed where plaintiff's delay was in excess of the analogous statute of limitations).

Like the plaintiff in *Lingenfelter,* Mr. Zelazny asserts that a presumption of prejudice is unwarranted and that, to the extent that any of the above cases actually support such a presumption, they were wrongly decided. We need not, however, reach this question because the district court in this case also determined that there was actual prejudice to the government from Mr. Zelazny's inexcusable delay and we affirm on that basis.

### 2.

The district court identified two sources of prejudice. First, it determined that the government was prejudiced by the fact that it had filled the position of CED when Mr. Zelazny was fired and had been paying the salary of the occupant of that position for

---

**1.** In his reply brief, Mr. Zelazny asserts that he does not concede that he lacked diligence in filing this lawsuit. Appellant's Reply Br. at 1. He argues that his delay in bringing suit should be measured from the date of the State Committee's denial of his request for rescission and a personal appearance rather than from the date of his termination. He then submits that, although he has no explanation for the delay during this period, his silence on this point should not be taken to imply a concession of his lack of diligence.

We have said that an appellant is required by Rule 28(a)(4) of the Federal Rules of Appellate Procedure to present in his brief to the appellate court the issues that he desires to litigate and to support his arguments on those issues with ap-

propriate judicial authority. *See Beard v. Whitley County REMC,* 840 F.2d 405, 408 (7th Cir. 1988). " 'It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.' " *Id.* at 408–09 (quoting *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir. 1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987)). Mr. Zelazny's conclusory remarks about his lack of diligence without any further argument on the issue and without any attempt to offer a justification for his delay do not comply with the strictures of Rule 28(a)(4). Therefore, even if Mr. Zelazny disputes the district court's determination of inexcusable delay, he has waived any argument on that issue.

the past eight years. Mem. op. at 6. Second, ruling on the plaintiff's motion to reconsider, the court noted that the CED post for Cook–DuPage County was being abolished. The court therefore determined, as an additional source of prejudice to the government, that "to reinstate Plaintiff would disrupt the reorganization process currently underway in the Cook–DuPage County office of the ASCS." *Zelazny v. Lyng*, No. 86-C-8687, order at 2 (E.D.Ill. Aug. 12, 1987); R. 34 at 2.

A district court's decision on laches is reviewed for abuse of discretion.[2] In evaluating the district court's determinations of prejudice under this standard, we begin with a general observation. Although we have said that we need not rely on a presumption of prejudice in this case, we note that the plaintiff's inexcusable delay is relevant to whether actual prejudice has been shown. "If only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 807 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). In this case, the delay was lengthy—approximately eight years from the plaintiff's termination—and Mr. Zelazny has not offered any explanation for not bringing suit earlier.

Typically, the prejudice contemplated by laches stems from the loss of evidence di-

minishing the defendant's chances of success at trial. *See id.* at 808 and n. 17; *Powell*, 366 F.2d at 638; *see also EEOC v. Vucitech*, 842 F.2d 936, 942–43 (7th Cir. 1988) (discussing application of laches against the EEOC in Title VII enforcement action). Nevertheless, the precedents make clear that pecuniary losses and administrative inconvenience also may be considered in weighing prejudice to the defendant. Both elements are present here. In *Goodman*, the Eighth Circuit "reject[ed] the contention that … the payment of lost wages by itself could constitute prejudice within the contemplation of a laches defense." 606 F.2d at 808. In *Lingenfelter*, we agreed with this basic proposition; however, we also said that "such payments clearly damage the defendant unfairly when they continue for many years in the absence of any claim against it." 691 F.2d at 342. In explaining this point, we said:

> [T]he Eighth Circuit recognized that, because laches is an equitable doctrine, a broad range of evidence is relevant to determine whether a defendant has been unfairly prejudiced. One type of prejudice, therefore, arises when a defendant adjusts its position in a manner that would not have occurred if the plaintiff had not delayed. *We believe that this analysis supports the consideration of pure monetary losses as a factor in determining unfair prejudice. Laches applies to protect a defendant not only from diminished likelihood of success on the merits at trial, but also from*

---

**2.** *See Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) ("the existence of laches is a question primarily addressed to the discretion of the trial court"); *Lingenfelter v. Keystone Consolidated Indus.*, 691 F.2d 339, 341 (7th Cir.1982) (per curiam); *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1009 (7th Cir.1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *Boris v. Hamilton Mfg. Co.*, 253 F.2d 526, 528–29 (7th Cir.1958); *see also Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir.1974).

In *Bennett v. Tucker*, 827 F.2d 63, 68 (7th Cir.1987), we noted that our previous cases have applied varying standards in reviewing judgments for defendants based on laches. "In some cases, we have analyzed such judgments under the abuse of discretion standard; in other cases, we have used the clearly erroneous standard; and, in a few cases, we have reviewed the decision *de novo*." *Id.* (citing *Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 935–40 (7th Cir.1984) (Posner, J., concurring) (collecting cases)). As in *Bennett*, however, we need not resolve this conflict because, even if we were to review the district court's decision *de novo*, we would affirm. One point is clear: "The defense of laches calls for evaluation of prejudice on which the district court should have *a leading role.*" *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 933 (7th Cir.1988) (emphasis supplied).

*unfairly accentuated damages occasioned only by a plaintiff's unreasonable delays.*

*Id.* at 342 n. 2 (emphasis supplied) (citations omitted); *see also Vucitech,* 842 F.2d at 943 (laches may be invoked where the defendant expended large sums of money on employee benefits that unexpectedly turned out to be illegal, resulting in a staggering unanticipated further liability) (dicta); *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 382 (7th Cir.1987) ("Our decision in *Lingenfelter* makes clear that the payment of wages for many years to other employees who worked in place of the plaintiff can be considered as an element of prejudice to the defendant in the absence of any claim against the defendant."); *Powell,* 366 F.2d at 638 ("Of course, laches serves other purposes collaterally, if not directly, including minimization of the disruption and expense caused by affording certain relief."). Moreover, the Supreme Court has explicitly noted that, in addition to pecuniary loss, disruption of governmental business is a factor that must be weighed. In holding that the claim of a former government employee was barred by laches, the Supreme Court said:

> When a public official is unlawfully removed from office, ... obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified *the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.*
>
> .... [T]he relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in

changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, *when unexplained,* the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy.

*United States ex rel. Arant v. Lane,* 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650 (1919) (emphasis supplied).

We conclude that the fact that the government has been paying wages to Mr. Zelazny's replacement over the past eight years, along with the fact that Mr. Zelazny's position is now being abolished, adequately establish actual prejudice to the government and justify application of the doctrine of laches to bar the plaintiff's suit.[3]

### 3.

In reaching the conclusion that the government has established sufficient actual prejudice, we necessarily reject Mr. Zelazny's suggestion that the district court's determination of actual prejudice is premature. Mr. Zelazny argues that his present suit seeks only a procedural remedy—the rescission of the State Committee's decision and a new hearing before the State Committee where he can present his case in a personal appearance. He contends that this relief could not possibly prejudice the government and that the government may reassert laches if his delay in bringing suit impedes its presentation of a defense at the hearing. Mr. Zelazny states that his argument is supported by the decision of the District of Columbia Circuit in *Powell.* However, *Powell* is a different case than this one. The plaintiff in *Powell* sought

---

**3.** We note that the government also asserts prejudice from the loss of testimony of two County Committee members who are now deceased. Mr. Zelazny argues that the government has made no showing that the two deceased members have testimony that would not be available from the other four living members of the Committee, nor has it demonstrated that any of these four members would be unavailable or that their testimony would be impaired by loss of memory. Mr. Zelazny further asserts that his employment records have been preserved pursuant to his written request, so that the government also has not shown that it is prejudiced by a loss of documentary evidence. Although the government argued the loss of testimony of the two deceased Committee members as one source of prejudice to the district court, see R.33 at 2 (Defendant's Response to Plaintiff's Motion to Reconsider), the district court did not refer to this factor and we do not rely upon it.

direct judicial review of the government's decision to terminate his employment. 366 F.2d at 635–36. The court held that the plaintiff's suit was not barred by laches. On the question of prejudice, the court determined that the government had failed to show that the plaintiff's reinstatement would disrupt the government service. The court also determined that the government was not financially prejudiced by the payment of wages to another worker because the plaintiff did not seek back pay. The court commented that: "If and when [the plaintiff does request back pay], that issue might be judged by a different standard." *Id.* at 639. The *Powell* court's deferment of the issue of financial prejudice makes sense in light of its earlier finding that the plaintiff's reinstatement claim was *not* barred by laches. In contrast, as noted in the preceding section, we agree with the district court that, in this case, an award of *either* back pay *or* reinstatement would prejudice the government. Although Mr. Zelazny seeks neither form of relief in this lawsuit, he admits that he would seek such relief in a hearing before the State Committee. *See* Appellant's Reply Br. at 7. The relief Mr. Zelazny *does* seek in this lawsuit would, if granted, require the government to litigate his entitlement to reinstatement and/or back pay. These matters would be the only issues in dispute. We shall not require the government to embroil itself in litigation that, if Mr. Zelazny were to prevail, could only result in prejudice to the government. The district court did not act prematurely in holding that the present suit is barred by laches.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.