948 F.2d 332
 57 Fair Empl.Prac.Cas. (BNA) 605,
57 Empl. Prac. Dec. P 41,081
George D. KARAZANOS, Plaintiff-Appellant,
v.
NAVISTAR INTERNATIONAL TRANSPORTATION CORP., formerly known
as International Harvester Company, Defendant-Appellee.
 No. 90-3367.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1991.
Decided Nov. 18, 1991.
 
 Dennis A. Berkson, Andrew W. Levenfeld (argued), Chicago, Ill., for plaintiff-appellant.
 David J. Parsons (argued), Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.
 Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 BAUER, Chief Judge.
 
 
 1
 Plaintiff George Karazanos sued his employer, Navistar International Transportation Corporation ("Navistar"), alleging unlawful discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1988) ("ADEA"). Karazanos appeals the district court's grant of summary judgment in favor of Navistar. We affirm.
 
 I.
 
 2
 Navistar terminated Karazanos in January 1985. He filed charges with the Equal Employment Opportunity Commission ("EEOC") in May 1985, alleging that he had been discriminated against based upon his age and national origin. Karazanos, who was born in Greece, was 46 years old when he was terminated. The EEOC issued a Notice of Right to Sue dated September 26, 1986, and Karazanos filed this action. Karazanos does not appeal the district court's grant of summary judgment on his national origin claim, so we consider only his age discrimination claim.
 
 
 3
 Karazanos began working for Navistar (formerly known as International Harvester Company) in 1968 as an Engineering Tester. Karazanos has a bachelor's degree in mechanical engineering from the Nautical Government College in Athens, Greece. Before coming to Navistar, Karazanos spent nine years as an engineer in the Greek merchant marine. During his first ten years at Navistar, Karazanos worked as a technician in Department 550, the company's research and development department.
 
 
 4
 When Navistar began experiencing economic difficulties in 1979, it changed its employment structure to ensure that all employees were working at their full professional capacities. Karazanos was upgraded from technician to engineer. According to Karazanos' supervisors--Chief Engineer Tom Biros ("Biros") and Product Engineer Frank Bondarowicz ("Bondarowicz")--Karazanos had difficulty handling these new responsibilities. Karazanos denies this charge, and relies on a series of performance evaluations as support.
 
 
 5
 Navistar and Karazanos differ over the correct interpretation of the performance evaluations. The basic conflict is between the pre-printed achievement levels that the evaluator selected and the evaluator's written comments. Karazanos received primarily "M" ratings. The M achievement level is defined as "Meets position accountabilities; achievement which is expected from experienced and qualified individuals." Supplemental Record ("S.R."), Record 96, Karazanos Depo., Ex. 11. In Karazanos' evaluations, the pre-printed comments were often somewhat at odds with the evaluator's personal comments. For example, in a December 1979 evaluation, the evaluator marked boxes indicating that Karazanos "was [s]ometimes at a loss in other than routine situations. Frequent checkup required;" and "[h]as satisfactory knowledge of practically all phases of his work." Nevertheless, in his written comments, the evaluator said "recent problems ... have raised some doubts in my mind regarding George's capability as an engineer." S.R., Record 96, Karazanos Depo., Ex. 8. (emphasis in original). Similarly, in the January 13, 1981 evaluation, the evaluator again marked M; in his written comments he stated, "George's performance in general is adequate. However, improvement is required in the technical accomplishment accountability area, as noted above, to maintain overall performance at M level." S.R., Record 96, Karazanos Depo., Ex. 11. Subsequent evaluations continue this pattern: written comments reveal the evaluator's doubts regarding Karazanos' engineering ability and his willingness to accept responsibility and criticism. See, e.g., S.R., Record 96, Karazanos Depo., Ex. 11, 10/9/81, 3/6/84 evaluations.
 
 
 6
 In 1983, Navistar reassigned Karazanos to a different group in Department 550 in an attempt to utilize his skills better. Later that year he was promoted from senior engineer grade P-2 to grade P-3. Karazanos contends that this promotion was based upon merit. Navistar asserts that it represented compensation to employees for a long period of depressed wages.[1] Regardless of the reason for it, Karazanos was the only engineer in Department 550 to receive a promotion and raise.
 
 
 7
 Karazanos claims that Navistar began compiling a negative personnel file in 1984 so that it could terminate him. Bondarowicz gave Karazanos an "I" rating in his March 1984 evaluation. Level I is defined as "[i]mprovement required before performance is fully acceptable." In his written comments, Bondarowicz stated that Karazanos required "more attention to details" and "must come up with specific recommendations, not general." S.R., Karazanos Depo., Ex. 13. Biros and Bondarowicz informed Karazanos in October 1984 that because his performance had not improved since March, they were placing him on probation for ninety days. They warned Karazanos that unless his performance significantly improved by the end of the ninety days, he would be subject to termination.
 
 
 8
 Four separate incidents led Biros and Bondarowicz to put Karazanos on probation. The most significant incident occurred during the course of the so-called "9-liter project." Karazanos was assigned as the engineer in charge of modifying a nine-liter engine to satisfy the Environmental Protection Agency ("EPA") 1985 model year emission standards ("the 9-liter project"). One portion of the engine, the cover to a part called the torque capsule, was not redesigned. Because of changes made to the engine, it no longer fit. Navistar did not discover the oversight until the engine was shipped out for testing. Karazanos testified that he was aware that there was a tight fit in general, but because he could perform all the tests assigned to him with the cover off, he had no occasion to discover the problem. Karazanos denied that it was his responsibility to catch the error. He informed his supervisors that it was the design engineers responsibility to check the cover. They disagreed. Because Karazanos was the Project Engineer, Navistar believes it was his responsibility to make sure that everything in the engine fit properly, or at least to tell someone if there was a tight fit. We agree, as the district court properly determined, this is not an unreasonable expectation. See Karazanos v. Navistar Int'l Transp. Corp., No. 86 C 10097, 1990 WL 140986, at *2, 1990 U.S. Dist. LEXIS 12763, at * 4 (N.D.Ill. Sept. 27, 1990). Karazanos was in charge of the entire modification. It seems reasonable to expect the head of a project to check his subordinates' work. It cost Navistar approximately $4000 to fix the cover, but production of the engine was not delayed. Navistar claims that the error could have been disastrous had it not been discovered or if it had delayed the production schedule. The engine did meet the EPA emission standards.
 
 
 9
 Other incidents contributed to Karazanos' probation. In an engine smoke test, Karazanos was asked to replace one supplier's nozzles with another's. Karazanos only replaced seven of the eight nozzles in the system. This made the data collected during the test unusable. Moreover, Karazanos did not realize that the performance was bad or that he had made a mistake. See S.R., Rec. 96, Bondarowicz Depo. at 61-62. During another test, Karazanos exceeded the engine's peak firing pressure. Karazanos also made two technical errors in a letter, which Navistar believes showed that he did not understand the nature of his work. In addition, Karazanos refused to work overtime, and neglected to run an emissions test on a pump. These events, coupled with the mistake on the 9-liter project led Biros and Bondarowicz to put Karazanos on probation.
 
 
 10
 Karazanos' performance did not improve. After the probationary period, Biros contacted Human Resources Manager David Baron. They discussed whether it was possible to retain Karazanos in a technical capacity only, and thereby avoid terminating him. They decided that because his poor performance was due to technical incapability, he could not be retained. Karazanos was terminated in January 1985. He was replaced by an engineer 19 years his junior.
 
 II.
 
 11
 It is well established that review of a district court's grant of summary judgment is de novo. See, e.g. La Preferida, Inc. v. Cerveceria Modelo, S.A., 914 F.2d 900, 905 (7th Cir.1990). In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion," Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990), and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990). Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the nonmoving party. Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). Further,
 
 
 12
 [t]he workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand defendants' motions for summary judgment.
 
 
 13
 Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir.1989).
 
 
 14
 To succeed on his age discrimination claim, Karazanos must prove "that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." LaMontagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1409 (7th Cir.1984). There are two ways in which a plaintiff in an age discrimination case may prove his claim. He may try to meet his burden head on by presenting direct or circumstantial evidence that age was the determining factor in his discharge. Or,
 
 
 15
 as is more common, [ ]he may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), and later adapted to age discrimination claims under the ADEA.
 
 
 16
 Weihaupt v. American Medical Ass'n, 874 F.2d 419, 424 (7th Cir.1989), quoting Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir.1988). The employee must first establish a prima facie case of discrimination. The prima facie case has four elements. The employee must show: (1) he was in the protected class (persons between the ages of 40 and 70), (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) he was discharged or demoted, and (4) the employer sought a replacement for him. Weihaupt v. American Medical Ass'n, 874 F.2d 419, 427 (7th Cir.1989).
 
 
 17
 If the employee is successful, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext.
 
 
 18
 Id. (citations omitted).
 
 
 19
 Navistar conceded that Karazanos was in the protected age class, terminated, and replaced with a younger person. Navistar contests the second element of Karazanos' prima facie case. It contends that Karazanos was not performing according to its legitimate expectations and that was the reason for his termination. Karazanos argues that he was performing adequately and relies on his pre-1984 performance evaluations and a raise he received in 1983 to support his claim. As the district court correctly pointed out, however, the issue is whether the employee was performing well at the time of his termination. 1990 U.S. Dist. LEXIS at * 12. "[W]hether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time." Weihaupt v. American Medical Ass'n, 874 F.2d 419, 427 (7th Cir.1989), quoting Grohs v. Gold Bond Bldg. Prods., 859 F.2d 1283, 1287 (7th Cir.1988). We must focus, therefore, upon Karazanos' performance at the time of his termination.
 
 
 20
 Karazanos disagrees with Navistar's assessment of his performance. It is critical to note, however, that he does not deny that the problems occurred. Rather, he objects to Navistar's reaction to them. As the district court stated: "suffice it to say that Karazanos responded with his own specific explanations that he did not really perform poorly in any of these instances." Karazanos v. Navistar Int'l Transp. Corp., No. 86 C 10097, 1990 WL 140986, at *4, *7, 1990 U.S. Dist. LEXIS 12763, at *12, * 20. Based upon Karazanos' explanations and the testimony of two other engineers who provided vague support for these explanations, the district court reluctantly ruled that Karazanos established a prima facie case. Id.
 
 
 21
 The burden of production then shifted to Navistar to articulate a legitimate, nondiscriminatory reason for Karazanos discharge. See Weihaupt, 874 F.2d at 427. Navistar met this burden: it stated that Karazanos was terminated because of his poor performance. This response dissolved the presumption created by the prima facie case. Karazanos then had the burden of showing that Navistar's reason was a mere pretext for discrimination. The district court found that Karazanos failed to show that Navistar's stated reasons for terminating him were mere pretext for age discrimination. 1990 WL 140986 at *7, 1990 U.S. Dist. LEXIS at * 20.
 
 
 22
 To establish that an employer's reasons are pretext, an employee may show (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence. Johnson v. University of Wisconsin-Milwaukee, 783 F.2d 59, 63 (7th Cir.1986). In LaMontagne, 750 F.2d at 1405, this court explained that an employee could show that the employer's proffered reasons were unworthy of credence by showing they were not really the motivating factors or that they were jointly insufficient to motivate the discharge. Id. at 1414-15.
 
 
 23
 We agree with the district court that a reasonable jury could not find that Navistar's reasons had no basis in fact and were, therefore, unworthy of credence. Karazanos asserts that Navistar began documenting an untrue assessment of his performance in 1984 in order to terminate him because of his age. Appellant's Brief 18-21. He maintains that his error on the 9-liter project was merely an excuse to fire him. The only other facts Karazanos points to are: (1) the engineer replacing him was 19 years younger, (2) another person within the protected age class ("a man in his late 40's or early 50's") was terminated after he completed modifications of the 9-liter engine to comply with the 1982 emission standards (Appellant's Brief at 19), and (3) a Navistar graph plotting employees' length of service, performance, and salary.
 
 
 24
 We agree with the district court that Karazanos' characterization of the 9-liter project as a means of getting rid of older employees is entirely unsubstantiated. Navistar showed that several other engineers in the protected class worked on the project and were not terminated. Appellee's Brief at 29. Moreover, Karazanos presents no evidence of reasons for the other engineer's termination: a plaintiff's speculation is not a sufficient defense to a summary judgment motion. "A party to a law suit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." Palucki, 879 F.2d at 1572.
 
 
 25
 The data presented in the Navistar graph also fails to create a genuine issue of material fact. The graph was generated to determine the appropriate salary increases and promotions to be given in 1983 in Department 550. Karazanos asserts that the engineers whose ages ranged from 45 to 60 fell along a line labeled "W" indicating weak performance, while the engineers aged 20 to 35 fell along lines labeled "E" and "M", indicating better performance. Based upon his interpretation of the graph, Karazanos argues that it shows a "clear bias ... against the performance capabilities of older engineers on the part of Mr. Biros and Mr. Bondarowicz." Appellant's Brief at 18. But we agree with the district court that Karazanos' interpretation of the graph, particularly in light of statistics presented by Navistar, is not evidence that he was terminated because of his age. Of forty employees remaining in Department 550 after Karazanos' termination, 43% were in the protected age group and 35% were older than Karazanos. Bondarowicz hired four employees in 1984, one of them was 55 years old. Bondarowicz was the same age as Karazanos, and of the 14 employees who worked for Bondarowicz after Karazanos was terminated, 57% were within the protected class and 43% were older than Karazanos. See 1990 U.S. Dist. LEXIS at *23-24.
 
 
 26
 Although it is possible that Navistar's graph shows the Department discriminated against older employees in its performance evaluations (although Navistar disputes this contention), Karazanos does not provide a causal link between the graph and his termination. The graph was generated in 1983, Karazanos was terminated in 1985. In fact, Karazanos uses the raise that he received in 1983, which was calculated using the graph, as support for his position that his performance was satisfactory.
 
 
 27
 The instant case is analogous to the circumstances in Palucki, 879 F.2d at 1568. In Palucki, a 40-year-old employee who managed the appliance department at a Sears store was transferred. In his new position, the employee managed the jewelry, shoe, and cosmetic departments. Id. at 1570. The employee found the adjustment difficult, and received three deficiency reports during his one-year tenure. At the end of the year, he was discharged and replaced by a man in his early thirties.
 
 
 28
 The discharged employee sued, alleging that he had been discharged because of his age. The employee, like Karazanos, acknowledged that problems occurred, but argued that he was reassigned to create a pretext for firing him. Similarly, Karazanos contends that the 9-liter project was given as the "kiss of death" to older employees. 1990 WL 140986 at *7, 1990 U.S. Dist. LEXIS at * 20. In Palucki, the employer had retained older employees in equivalent positions, as Navistar has done in the instant case. The employee in Palucki tendered testimony by another discharged employee that Sears had "a hit list of older workers whom they wanted to get rid of, and that Palucki's name was on the list." Id. at 1571. This evidence was based upon the witness's "gut feeling." Id. In the case at bar, Karazanos speculates that a two-year-old graph plotting salary and tenure shows Navistar terminated him because of his age. Karazanos testified that "he felt and that everybody knew" that the company was trying to get rid of all of the older employees. 1990 WL 140986 at *7, 1990 U.S. Dist. LEXIS at *22, Karazanos Depo. at 104. Karazanos' feeling is as ephemeral as the Palucki witness's "gut feeling." Karazanos' assertion that his performance problems were "99% the fault" of others is equally unavailing. Appellant's Brief at 20. The employee "must do more than challenge the judgment of his superiors through his own selfinterested assertions ... The employee's perception of himself ... is not relevant. It is the perception of the decision maker which is relevant." Weihaupt, 874 F.2d at 428.
 
 
 29
 The evidence, even when considered in the light most favorable to Karazanos, fails to create a jury question that Navistar's reasons for discharging him were mere pretext for discrimination. Summary judgment is designed to head off a trial if the opposing party "does not have a reasonable prospect of prevailing before a reasonable jury--that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice." Palucki, 879 F.2d at 1572. We hold that Karazanos does not have a reasonable prospect of convincing a jury that Navistar discharged him because of his age.
 
 III.
 
 30
 For the foregoing reasons, the district court's grant of summary judgment is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Bondarowicz explained during his deposition that Navistar
 had a curve prepared by top management to try to bring in various people to certain levels after a long dry period when we were in trouble. So George [Karazanos] was promoted basically because of his years of experience here warranted by our matrix that we had made up to fall in [a] certain area and to give him the absolute minimum salary for employees in the area.
 S.R., Rec. 96, Bondarowicz Depo. at 77. Karazanos contends that this graph evidences Navistar's systematic discrimination against older employees. Despite this position, he maintains that the raise he received which was calculated using this graph was based upon merit. We return to these questions infra, at 336-37.