Eileen D. MLSNA, Plaintiff–Appellee,

v.

UNITEL COMMUNICATIONS, INC., Defendant–Third Party/Plaintiff–Appellant,

v.

Theodore M. MLSNA, Third Party/Defendant–Appellee.

No. 94–1477.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1994.

Decided Nov. 30, 1994.

Rehearing Denied Jan. 5, 1995.*

---

1. Harris does not challenge the factual basis for the enhancement under U.S.S.G. § 3B1.1 for being an organizer or leader.

* Judge Cudahy voted to grant the petition for rehearing.

**1126**

Denice A. Gierach (argued), Naperville, IL, for plaintiff-appellee.

Paula K. Maguire (argued), Gregory A. Friedman, Sr., Friedman & Holtz, Chicago, IL, for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and GRANT,** District Judge.

FLAUM, Circuit Judge.

Eileen Mlsna ("Eileen") filed suit against Unitel Communications, Inc. ("Unitel") alleging that it violated the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. §§ 1161–68, by failing to provide her with notice of her right to elect continuation coverage through Unitel's group health plan after her husband, Theodore Mlsna ("Theodore"), resigned from the company. Unitel asserted that it did not owe Eileen any notice or continuation coverage because it had fired Theodore for gross misconduct, and that it did not have to pay Eileen's medical bills because of her subsequent actions. In addition, Unitel filed a third-party complaint against Theodore, alleging that any liability the court might find was due to his willful actions. The district court granted summary judgment for Eileen and Theodore. 825 F.Supp. 862. We reverse the court's award of summary judgment to Eileen and affirm its award of summary judgment to Theodore.

### I.

Theodore Mlsna worked as Unitel's Controller from February, 1987, to January, 1989. On January 23, 1989, Theodore tendered his resignation with one week's notice to Paul Mallin ("Mallin"), Unitel's President,

** The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

saying that he was leaving Unitel to work in a family canning business. The actual day of Theodore's departure, however, remains in dispute. In his deposition Theodore testified that Mallin told him to leave the office immediately, which Theodore did, effectively ending his employment with Unitel the same day that he tendered his resignation. Mallin contradicts this story in his affidavit, saying he fired Theodore on January 25, 1989, upon learning that Theodore had formed a competing business, Corporate Systems of America ("CSA"), and had solicited Unitel employees and customers for CSA.

While employed by Unitel, Theodore and his family received medical insurance through Unitel's employee group health plan. Unitel never sent notice to the Mlsnas about their right to continue this coverage after Theodore left its employ. On March 3, 1989, Eileen applied for medical insurance through CSA and its carrier, Pan–American Life Insurance Company. On the application Eileen stated that she had not received medical treatment in the last 12 months, when in fact she had been treated for health problems as recently as January, 1989. Eileen subsequently obtained coverage through National Insurance Services ("NIS"), a Pan–American subsidiary. She had surgery in June, 1989, and incurred significant medical bills over the next several months. While doing a routine check before paying for these expenses, NIS realized that Eileen had made material misrepresentations on her application. NIS consequently rescinded her coverage retroactively. During this time, Eileen did not submit any of these claims to Unitel's plan for payment.

Left without health insurance, Eileen filed this suit asserting that Unitel, as its plan's administrator, had failed to give her notice of her right to continue her medical coverage through its plan, as required by COBRA. Unitel raised three primary defenses: that no qualifying event had triggered its duty to send the notice because it had fired Theodore for gross misconduct, that Eileen's right to continued coverage had ended when she obtained insurance through NIS, and that Eileen's failure to submit her claims to Unitel in a timely fashion had relieved it of its duty

to pay them. Unitel also filed a third-party complaint against Theodore, alleging that he was liable to Eileen for his failure, as Controller, to send her COBRA notice before he left Unitel's employ. All parties moved for summary judgment.

The district court held that Theodore's tender of his resignation with notice constituted a qualifying event that triggered Unitel's duties under COBRA. It granted Theodore's motion for summary judgment in its entirety, denied Unitel's motion in its entirety, and granted Eileen's motion as to liability. *Mlsna v. Unitel Communications, Inc.,* 825 F.Supp. 862 (N.D.Ill.1993). The court ordered Unitel to reimburse Eileen for medical costs she incurred during the time she would have been eligible for continuation coverage under its plan. The court also imposed on Unitel a statutory fine of $10 per day, for a total of $15,740, and awarded attorney's fees and costs to the Mlsnas in the amount of $22,523.93. This appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *Karazanos v. Navistar International Transportation Corp.,* 948 F.2d 332, 334 (7th Cir.1991). Like the district court, we must review the record, and all reasonable inferences which can be drawn from it, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

## A.

COBRA requires plan administrators, such as Unitel, to provide continued health insurance coverage to covered employees and their qualified beneficiaries and to notify them of the right to elect such coverage upon the occurrence of a "qualifying event." 29 U.S.C. § 1161. The statute defines a "qualifying event" in relevant part as "any of the

following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary: ... (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163. Eileen, as Theodore's spouse, is a qualified beneficiary. 29 U.S.C. § 1167(3)(A)(i).

■ The district court held that Theodore's tender of his resignation with notice constituted a qualifying event regardless of whether he actually stopped working for Unitel on that same day or on January 25, when Mallin allegedly fired him for gross misconduct. The definition of a qualifying event, however, says nothing about resignations with notice. Instead, it states that a qualifying event occurs at the "termination" of an employment relationship. 29 U.S.C. § 1163(2). We read this to mean that a qualifying event takes place when an employee actually stops working for an employer, not when he gives notice of his intention to do so. Sometimes, as under the scenario recounted by Theodore, this happens simultaneously. Other times, an employee may give days, weeks, or even months prior notice, which an employer will accept. In the interim the employment relationship continues. Only when the employee ultimately leaves the company, or has his hours reduced to the point of losing coverage, does a qualifying event occur, thereby triggering the administrator's duties under COBRA.[1]

■ Given that Theodore's tender of his resignation with notice was not a qualifying event, the district court must determine when, and under what circumstances, Theodore left Unitel and whether a qualifying event occurred. Theodore testified in a deposition that Mallin told him to leave the same day he tendered his resignation, while Mallin swore in an affidavit that Theodore continued working until Mallin fired him on January 25. Because the actual date may affect whether a qualifying event occurred, we find that this conflicting testimony gives rise to a genuine issue of material fact. The district court may also have to determine whether Theodore committed gross misconduct.[2]

By holding that a resignation with notice does not constitute a qualifying event we may appear to be giving employers an easy way to rid themselves of their COBRA duties: accept an employee's notice of resignation that Unitel had no duty to notify the Mlsnas or to extend continuation coverage to them. An employee could quit his job and his employer could later discover facts leading it to change the employee's departure status to termination for gross misconduct. Without deciding what affect this change would have on COBRA rights and duties, we simply note that it would be strange for an employee to have the power to preempt his employer's decision to terminate him for gross misconduct. *See Karby v. Standard Products Co.,* 7 Ind.Empl.Rts.Cases (BNA) 1235, 1992 WL 333931 (D.S.C.1992) (accepting a change of departure status to termination for gross misconduct in light of facts discovered after employee had left the company).

Eileen and Theodore, however, argue that the court should exclude all evidence of gross misconduct due to laches, citing the fact that Unitel did not assert that it had fired Theodore for gross misconduct until 2½ years after he left Unitel's employ. Whether or not a plaintiff can properly rely on laches, we find this argument without merit because the Mlsnas have made no showing of prejudice resulting from the delay. *Zelazny v. Lyng,* 853 F.2d 540, 543 (7th Cir.1988).

---

**1.** This reading of the statute does not conflict with the analysis contained in *Gaskell v. Harvard Co–Op Society,* 3 F.3d 495 (1st Cir.1993). In that case the employee had gone on full disability leave, which reduced his hours from 40 to 0, but had continued to receive employer-provided medical insurance. The court had to determine whether the continuation coverage period "commence[d] with the event leading, under the terms of the plan, to loss of coverage, ... [or with] the loss of coverage itself." *Id.* at 499. In accepting the former date, the First Circuit relied on Proposed Regulations issued by the Treasury Department and the Senate Finance Committee Report accompanying COBRA. These sources indicated that the COBRA continuation coverage period included, was not in addition to, any other coverage periods permitted by local law or the plan. *Id.* at 499–500.

We agree, but it does not change our holding in this case. Even though the Mlsnas would have eventually lost coverage due to Theodore's tender of his resignation, that tender did not constitute a qualifying event, as taking full disability leave in *Gaskell* did, assuming it also led to loss of coverage under the plan.

**2.** Even if the court finds that Theodore left Unitel on January 23, we do not preclude the possibility

and then fire him for gross misconduct. We do not believe this scenario will result because while COBRA imposes only minimal responsibilities on employers and administrators, it subjects them to significant penalties for failure to comply with its provisions. An employer must notify the plan administrator of the occurrence of a qualifying event, an administrator must then notify the qualified beneficiary of the right to elect continuation coverage, and a plan must provide that coverage if elected, with the employee or qualified beneficiary paying up to 102% of the premium. 29 U.S.C. § 1162(3). Failure to issue required notice can result in a court ordering a plan administrator, in this case Unitel, to pay a statutory fine, of up to $100 per day, and attorney's fees. 29 U.S.C. § 1132(c)(1). We suggest that these possible sanctions pose sufficient deterrence to any employer's and/or plan administrator's potential malfeasance.

■ In addition to holding that Theodore's resignation with notice constituted a qualifying event, the district court held that even if Mallin had fired Theodore for gross misconduct Unitel still had to notify Eileen of her right to elect continuation coverage. The court stated that Congress had enacted COBRA to "protect spouses and dependents of employees from abruptly losing health care coverage" and "[i]t appears unreasonable that the action of the employee could excuse the COBRA protection of the spouse." 825 F.Supp. at 865. We find that the court's holding conflicts with the plain language of the statute and cannot be supported.

Under COBRA, an employer must give notice and extend continuation coverage only after the occurrence of a qualifying event. 29 U.S.C. §§ 1161(a), 1166(a)(4). The statute explicitly excludes termination for gross misconduct as a qualifying event. 29 U.S.C. § 1162(3). Nowhere does the statute indicate that a qualified beneficiary has a right to notice in any circumstance other than a qualifying event. We cannot look to legislative history to demand more of employers than Congress has seen fit to require.[3]

### B.

Unitel argues that Eileen's right to continuation coverage, and its liability for her medical bills, ended when she obtained coverage through NIS. *See* 29 U.S.C. § 1162(2)(D)(i). The district court, however, held that because Eileen later lost her NIS insurance it was as if she had never had other coverage. 825 F.Supp. at 866. The court also held that the statute's termination section did not apply because Eileen had never received the required notice and had not had the opportunity to elect continuation coverage through Unitel. *Id.*

■ We do not reach the issue of whether the recision of Eileen's NIS insurance affected her right to continuation coverage because we agree with the district court that her right of election, if she had such a right, could not be terminated without her first receiving the required notice. We cannot infer from Eileen's NIS coverage that she would have declined continuation coverage through Unitel. Furthermore, the fact that Theodore knew about the right to elect the coverage because of his duties at Unitel and chose not to do so does not alter our analysis. An employee's knowledge of his COBRA rights does not relieve the plan administrator of its notification duties. *See Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 409 (E.D.Ark.1992). Congress required plan administrators to give notice after qualifying events even though employees and qualified beneficiaries would already have knowledge of their rights because plan administrators must provide them with that information when they become covered under the plan. 29 U.S.C. § 1166(a)(1). Because the statute does not make the duty to notify dependent upon an employee's knowledge, it cannot be used to infer what he would have done had he received the required notice. Likewise, an employee's knowledge cannot affect his spouse's right to notification or election. If Unitel did not fire Theodore for gross misconduct it owed the Mlsnas notice of their rights. Absent such notice, Unitel's duty to

---

3. Contrary to the dissent's assertion in footnote 1 of its opinion, this approach does not "harken[ ] back to the common law doctrine of coverture,"

for nothing in our opinion even remotely suggests that the qualified beneficiary, rather than the employee, will in every case be a woman.

provide Eileen with continuation coverage did not end when she obtained other coverage. Unitel also argues that it does not have to reimburse Eileen's medical costs because she did not submit her claims to Unitel within 20 days of their occurrence, as required by the terms of its plan. We agree with the district court that Eileen's recovery cannot be denied for this deficiency. After Theodore terminated his employment with Unitel its plan no longer covered Eileen. She had no duty to submit claims, which she would have assumed would not be paid, to a plan to which she no longer belonged.

### C.

■ In filing a third-party complaint against Theodore, Unitel alleged that any failure on its part to provide Eileen with COBRA notice was due to Theodore's willful misconduct in not doing so before he left Unitel's employ. While it appears that Theodore's duties at Unitel included sending out COBRA notices we have already held that his resignation with notice did not constitute a qualifying event. That would only have occurred when Theodore stopped working for Unitel, after which time he had no duty to do anything for the company. The district court, therefore, properly granted Theodore's motion for summary judgment.

### D.

■ Finally, the district court ordered Unitel to pay a statutory fine of $10 per day for its failure to give Eileen notice of her rights under COBRA, for a total fine of $15,740. In light of our decision that Theodore's resignation with notice did not constitute a qualifying event, we must vacate this award and the court's award of attorney's fees and costs. If, on remand, the district court concludes that Unitel did not fire Theodore for gross misconduct so that it owed Eileen notice and continuation coverage, the court will have the discretion to impose another fine and fees. In exercising that discretion the court should take into consideration the presence or absence of good faith on Unitel's part in putting forth the gross misconduct defense. Congress did not define "gross misconduct" but stated that "pending

promulgation of regulations, employers are required to operate in good faith compliance with a reasonable interpretation of these substantive rules, notice requirements, etc." H.R.REP. No. 453, 99th Cong., 1st Sess. 563 (1985). *See Rodriguez–Arbreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 588 (1st Cir.1993) (bad faith is a factor to consider in exercising discretion); *Van Hoove v. Mid–America Bldg. Maintenance, Inc.,* 841 F.Supp. 1523, 1537 (D.Kan.1993) (not imposing fine because found plan administrator had acted in good faith); *Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 840 (N.D.Cal. 1990) (good faith is a mitigating factor in determining the amount of the daily fine).

■ In addition, the district court should base its award of attorney's fees and costs on whether the " 'losing party's position [was] substantially justified and taken in good faith, or was that party simply out to harass its opponent.' " *Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1405 (7th Cir.1992) (quoting *Meredith v. Navistar International Transportation Corp.,* 935 F.2d 124, 128 (7th Cir.1991)).

For the foregoing reasons, this case is reversed in part, affirmed in part, vacated in part and remanded.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

If the majority's conclusions about the fragility of Eileen's medical coverage are correct, there is indeed a health care crisis. Despite COBRA's numerous points of recognition that a non-employee spouse enjoys rights quite independent of those of her employee spouse, the majority somehow finds a statutory "plain meaning" to the contrary. And nowhere does the majority purport to construe COBRA to "take care to apply equitable principles and [to] fashion remedies to make injured parties whole." *Swint v. Protective Life Ins. Co.,* 779 F.Supp. 532 (S.D.Ala.1991) (quoting *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

The district court was eminently correct in saying that Congress enacted COBRA to "protect spouses and dependents of employ-

ees from abruptly losing health care coverage" and in noting that "[i]t appears unreasonable that the action of the employee could excuse the COBRA protection of the spouse." *Mlsna v. Unitel Communications, Inc.*, 825 F.Supp. 862, 865 (N.D.Ill.1993). Yet the majority completely ignores these factors in its adoption of a formalistic solution to a very real problem.

The statute's "plain language" (i.e. termination for gross misconduct is not a "qualifying event" triggering a notice obligation) does not determine whether Unitel had a duty to notify Eileen Mlsna, the non-employee spouse. The statute conceives of spouses as people in their own right. Not surprisingly, therefore, it provides for *independent notice* to covered spouses. 29 U.S.C. § 1166. An administrator must provide "written notice to each covered employee and spouse of the employee" at the time of commencement of coverage. 29 U.S.C. § 1166(a)(1). This notice must again be afforded given the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). The fact that a different section of the statute, see § 1163(2), abrogates COBRA's obligations if an employee has grossly misbehaved seems not to answer concerns about his spouse's rights. Nor, for that matter, does it consider the plight of the dependents of that spouse—no notice obligation attaches as to those dependents *because of notice to the covered spouse. See* 29 U.S.C. § 1166(c) ("notification to an individual who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made"). The majority's opinion conveniently forgets these provisions in favor of the gross misconduct provision's "plain language." This, despite the fact that the law has long since refrained from sub-suming a spouse's legal rights into those of her husband.[1]

The gross misconduct provision is punitive and ought to be interpreted narrowly. The denial of benefits is intended, at base, to deter employee misconduct. *See Burke v. American Stores Employee Benefits Plan*, 818 F.Supp. 1131, 1136 (N.D.Ill.1993). It therefore makes little sense for an employee's misconduct to be attributed to his spouse (and dependents)—for the purpose of denying insurance coverage, of all things. After all, we are hardly dealing with some windfall benefit to which no reliance interest attaches. Instead, we tamper with health care coverage, a subject producing great apprehension in many Americans.

The majority's opinion also unnecessarily confuses *cause* and *effect*. The statute states that "termination" is a qualifying event. This occurs, surely, when an employee stops working. The gross misconduct provision, however, looks to the reason for which an employee stops working (i.e. the *cause* of the termination). If termination was caused by gross misconduct, then no qualifying event triggering a duty to notify the employee occurred. If, however, termination was caused by *some factor other than gross misconduct*, a qualifying event as prescribed by the statute took place. Here, Judge Zagel might have simply determined as a matter of law that Mr. Mlsna's resignation *caused* termination.[2] Then, the resignation itself need not be the statutory qualifying event; instead, the resignation might merely negate the possibility of "termination for gross misconduct." The notice obligation—and the notice clock—would still begin running when the employee actually leaves the workplace. The majority's worries about the precise date that Mr. Mlsna left the workplace are hence misplaced; because it is undisputed that Uni-

---

1. The majority's approach harkens back to the common law doctrine of coverture, which refused to recognize a married woman's independent legal existence. "By marriage, the husband and wife are one person in law; that is, the very being or legal existence of the woman is suspended during the marriage, or at least incorporated and consolidated into that of the husband." I **William Blackstone, Commentaries on the Law of England** 430–33 (1765). *See also* **Kermit L. Hall, The Magic Mirror** 35–37 (Oxford 1989) (discussing the doctrine of coverture in the colonial American legal system).

2. Judge Zagel does not justify his alternative holding that "Unitel did not terminate Theodore Mlsna for gross misconduct" in these precise terms. 825 F.Supp. at 865. The cause and effect analysis is, however, a plausible reading of both the statute and Judge Zagel's conclusion.

tel failed to provide notice, timing is hardly an issue in this case. If the exact date of termination is relevant to anything at all, and I seriously doubt that it is on these facts, it is relevant to the *cause* of termination (i.e. whether Mr. Mlsna left work because he resigned, or because he was fired for gross misconduct). Upholding Judge Zagel here does not, contrary to the majority's assertion, give an employee an unfettered right "to preempt his employer's decision to terminate him for gross misconduct." Instead, it only entrusts trial judges with the duty to determine the cause of termination as a matter of law.

The result reached by the majority promises extended litigation not only in this case, but also in others—all to determine the simple issue whether an innocent spouse is entitled to notice that she must make her own arrangements for health insurance. It is most unlikely that Congress went to the trouble of prescribing independent notice to a spouse, but made that notice dependent upon the sort of technical considerations the majority thinks dispositive.

For these reasons, I respectfully dissent as to the matters indicated.