924 F.2d 1052
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Shirley A. LAYMON, individually and as Administratrix of the
Estate of Herbert R. Laymon, Plaintiff-Appellant,
v.
The KROGER COMPANY, the Retirement Committee of the Kroger
Company, Defendants-Appellees,
and
Prudential Insurance Company of America, Defendant.
 No. 90-3115.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1991.
Decided Feb. 12, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-88-677-R)
 B.K. Cruey, Roanoke, Va., for appellant.
 William F. Rutherford, Jr., Woods, Rogers & Hazlegrove, Roanoke, Va. (Argued), for appellees; Diane M. Baun, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before RUSSELL, WIDENER, and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The plaintiff, Shirley A. Laymon, brought an action for breach of contract against her deceased husband's former employer, the Kroger Company ("Kroger"). She alleged that a separation agreement and release, which stated an intention to replace a former employment contract, had been signed by her husband under duress and were therefore invalid. She also asserted claims for relief under the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Finding that Mrs. Laymon had failed to demonstrate sufficient evidence to support her claims, the district court granted summary judgment in favor of Kroger. We affirm.
 
 I.
 
 2
 Herbert R. Laymon, the husband of the appellant, worked for Kroger for over 35 years. He began as an apprentice meat cutter in 1951 and by 1979 was the supervisor of meat fabrication.[1] In the mid-1970s changes began occurring in the market. Slaughtering companies began doing their own meat fabrication more economically than Kroger could. In response to this change, Kroger began closing regional plants across the country. Then, in early 1986, two-thirds of the hourly and management positions were cut at the Salem, Virginia, meat plant where Mr. Laymon was employed. As part of the process of cutting back on operations, in the summer of 1986, Mr. Laymon was transferred to a quality assurance position at the plant, retaining the same salary and benefits as before. Kroger finally decided that the remaining fabricating operations would be eliminated by the fourth quarter of 1986. Several supervisory jobs, including Mr. Laymon's, were eliminated, and the fabricating facility was converted to a facility for receiving "boxed beef," beef that had already been fabricated.
 
 
 3
 Two supervisors at the Salem facility were offered separation packages. Mr. Laymon was also offered a separation package, but it was much more favorable than the packages offered to the other two supervisors. The company took into account Mr. Laymon's long service with the company and the fact that he was close to retirement. Mr. Laymon's package offered two benefits not found in the others: a lump sum payment of one year's salary ($40,000) and inactive status as an employee on leave until October 5, 1988, when he would be 55 and eligible for early retirement. The alternative to the separation package was continued employment as a supervisor at the distribution center in Salem with the same pay and benefits as Mr. Laymon had received in the meat fabrication position. Mr. Laymon requested other positions as alternatives. Kroger denied these requests on the grounds that there were no openings for the positions he requested.
 
 
 4
 Mr. Laymon talked on several occasions with Alan Koehler, the Personnel Manager for the Mid-Atlantic Marketing Area. Mr. Laymon discussed the agreement and requested that additional terms be included. He asked for continued health care benefits, and his request was granted. He also asked that his group life insurance be extended. Kroger refused to extend the group plan because life insurance under Kroger's group plan terminates upon an employee's last day of work. However, Mr. Laymon was permitted to convert the group coverage to an individual policy. Also, Mr. Laymon asked for additional time to decide between signing the separation agreement and accepting the job offered him. This request was granted.
 
 
 5
 On January 2, 1987, Mr. Laymon went to Koehler's office to sign the separation agreement and a release of claims against Kroger. Koehler's office door was open during the meeting. According to affidavits filed by Kroger representatives, Mr. Laymon appeared familiar with the documents and nodded as he read each section. He also appeared calm, rational, and lucid. Mr. Laymon signed the documents and, on January 8, 1987, wrote a letter to Koehler confirming his understanding of the effect of the agreement. Mr. Laymon's attorney assisted him in drafting the letter.
 
 
 6
 On February 5, 1987, Mr. Laymon died from a self-inflicted gunshot wound. Mrs. Laymon subsequently instituted suit against Kroger, individually and in her capacity as administratrix of her husband's estate. Her complaint alleged a breach of the employment contract between her husband and Kroger and that Kroger had violated the notice provisions of ERISA and COBRA. Although Mr. Laymon had executed a release of all claims against Kroger arising out of the former employment contract, Mrs. Laymon argued that her husband had signed the release under duress and that it was therefore invalid. The district court, however, found that Mrs. Laymon had demonstrated insufficient evidence of duress in the execution of the separation agreement and release. Therefore, the court granted summary judgment in favor of Kroger on this issue. The district court also granted summary judgment for Kroger on the ERISA and COBRA claims because it found that these claims had been superseded by the valid release and settlement agreement.
 
 
 7
 Mrs. Laymon now appeals, arguing that the district court erred when it found that she had not offered evidence of duress sufficient to withstand a summary judgment and when it denied her claims for recovery under ERISA and COBRA.
 
 II.
 
 8
 Under Virginia law, duress exists when a person is compelled to manifest apparent assent to an agreement by means of wrongful acts or threats that overcome that person's free will. See Bond v. Crawford, 193 Va. 437, 69 S.E.2d 470 (1952); Norfolk Div. of Social Servs. v. Unknown Father, 2 Va.App. 420, 345 S.E.2d 533, 541 (1986).
 
 
 9
 To establish her claim of duress, Mrs. Laymon speculates that, because her husband was thin and had a chronic cough, he feared the physical demands of the job that Kroger offered as an alternative to the separation agreement. Aside from Mrs. Laymon's conjecture, there is no evidence that Mr. Laymon expressed concerns about the physical demands of the job offered. Instead, there is only evidence that Mr. Laymon had requested that Kroger place him in a job different from the one offered as an alternative.[2]
 
 
 10
 The mere fact that Mr. Laymon would have preferred a job other than the one offered to him is not sufficient to establish duress in the signing of the separation agreement. Mr. Laymon was offered the same salary and benefits to which he had been entitled in his previous position. As observed by the Seventh Circuit in Henn v. National Geographic Society, 819 F.2d 824 (7th Cir.), cert. denied, 484 U.S. 964 (1987), "When one option makes the recipient better off, and the other is the status quo, then the offer is beneficial." Id. at 826. The choice that the former employee faced in Henn is similar to the one Mr. Laymon faced. The plaintiff in Henn accepted an early retirement plan that included severance pay of one year's salary, retirement benefits calculated as if the retiree had quit at age 65, medical coverage for life as if the employee were still on the payroll, and some supplemental life insurance coverage. The court stated:
 
 
 11
 He may retire [and] receive the value of the package [or] ... elect to keep working and forfeit the package.... That the benefits may overwhelm the recipient and dictate the choice cannot be dispositive. The question "Would you prefer $100,000 to $50,000?" will elicit the same answer from everyone, but it does not on that account produce an "involuntary" response.
 
 
 12
 Id.
 
 
 13
 Mrs. Laymon also offers as evidence of duress a statement by Kroger to her lawyer. A Kroger representative allegedly told Mrs. Laymon's lawyer that Kroger would have fired her husband if he had refused to sign the separation agreement. Kroger denies that it would have fired Mr. Laymon and asserts that the quality assurance job remained open to him during the entire negotiation period. Even assuming that Kroger intended to fire Mr. Laymon, there is no evidence that such an intention was communicated to him, either expressly or impliedly. Mr. Laymon could not have been forced to act against his will by a threat that was never communicated to him. Therefore, the statement to the appellant's lawyer does not support an allegation of duress.
 
 
 14
 After viewing the evidence in the light most favorable to Mrs. Laymon, we find that she has failed to indicate sufficient evidence of duress to create a genuine issue of material fact.[3]
 
 III.
 
 15
 The district court granted summary judgment for Kroger on Mrs. Laymon's ERISA and COBRA claims, finding that the release and settlement agreement superseded any prior agreements and that none of Mrs. Laymon's claims involve Kroger's failure to fulfill the settlement agreement. We agree with this finding. Under the release, Mr. Laymon covenants not to sue Kroger for any action of any nature, excepting only claims that may arise from a material breach of the settlement agreement. The release states that it is expressly intended as a waiver of all rights under local, state, and federal law. Therefore, any rights to an action for violation of the notice provisions found in ERISA and COBRA have been waived. The release leaves only an action for material breach of the settlement agreement, and Mrs. Laymon makes no claim of such a breach here. We affirm the district court's finding that Mrs. Laymon's claims are barred by the release and settlement agreement.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Meat fabrication is the breaking down of quarters of beef into primal cuts
 
 
 [2]
 Mrs. Laymon also asserts that she has discovered a note in which her husband allegedly stated that he was being "backed into a corner." Mrs. Laymon has never produced this note
 
 
 [3]
 To the contrary, the evidence indicates that Mr. Laymon acted of his own free will. He negotiated additional favorable terms for himself in an agreement that was already very favorable and appeared calm and lucid at the time of signing the agreement. Also, Mrs. Laymon herself stated that her husband had consulted his lawyer several times during the period that he was trying to make a decision. In fact, Mrs. Laymon stated that her husband's lawyer told her that he had helped her husband draft the letter confirming his understanding of the agreement he had signed