Terry McDOWELL, Individually and in his capacity as Executor of the last Will of Sharon Sidovar, Plaintiff–Appellee,

v.

John Raymond KRAWCHISON; Winton Road Chiropractic Center, Inc., Defendants–Appellants.

No. 96–3457.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1997.

Decided Sept. 17, 1997.

**956**

Randy J. Blankenship (argued and briefed), Erin A. McKee, Robbins, Kelly, Patterson & Tucker, Cincinnati, OH, for Defendant–Appellant.

Deborah R. Grayson (argued and briefed), Bruce H. Meizlish (briefed), Meizlish & Grayson, Cincinnati, OH, for Plaintiff–Appellee.

Before: KEITH, KENNEDY, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Defendants–Appellants John Raymond Krawchison and Winton Road Chiropractic Center, Inc. appeal from the district court's order entering judgment in favor of Plaintiff–Appellee Terry McDowell[1] in this action for failure to provide health insurance benefits under ERISA, as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986, § 10002, Pub.L. No. 99–272, 100 Stat. 227–32 (codified as amended at 29 §§ 1161–1168) ("COBRA").[2]

## I. BACKGROUND

At the times relevant to this case, Krawchison held an ownership interest in and operated several chiropractic clinics in Ohio, Kentucky, and Indiana. He owned half of the shares in each of three clinics, and owned all of the shares in the others, including Winton Road Chiropractic Center, Inc. Most of the clinics, including Winton Road, were separately incorporated. Krawchison also wholly owned Michiana Corporation, which provided management services for all of his clinics, such as paying bills (using the separate clinics' own funds), and provided patient transportation for the Indiana clinics. Krawchison followed corporate formalities with respect to each incorporated clinic and did not commingle their funds. The clinics provided health insurance to their employees through Medical Benefits Mutual Life Insurance Company; the plan under which employees of all the separate clinics were covered was obtained under the name "John R. Krawchison Corporation" (that name appeared on the employees' insurance cards). *See* Joint Appendix (J.A.) at 110 (McDowell's medical insurance identification card), 111–12 (McDowell's insurance certificate and schedule of benefits), 418–20 (employer application for participation in medical benefits plan). Krawchison obtained the insurance under a single plan for all the clinics in order to receive a lower rate (by aggregating the numbers of employees); there was no actual John R. Krawchison Corporation. J.A. at 381 (Krawchison Dep. at 14); *see also* J.A. at 202 (certification from Ohio Secretary of State that no record of such corporation had been filed with the state).

In late 1991, Krawchison asked McDowell to work for him at the Winton Road clinic in Cincinnati. J.A. at 400–01, 434. McDowell accepted and began work in early January 1992. J.A. at 442. In September 1992, Dr. Dennis Anderson, who had previously worked at the Winton Road clinic, returned to buy the clinic from Krawchison. He terminated McDowell's employment, effective two days later. J.A. at 459. McDowell, whose wife, Sidovar, had breast cancer, wanted to continue his and Sidovar's health insurance. J.A. at 460. Although McDowell claimed that Anderson had assured him that "we" would take care of the insurance, J.A.

---

1. McDowell appears before this court on his own behalf and as the Executor of the Last Will of Sharon Sidovar, who died during the pendency of the district court litigation.

2. Section 1 of the Act states that it may be cited as the Consolidated Omnibus Budget Reconcilia-tion Act of 1985; apparently, the first word was changed when it was enacted in 1986. References to the Act in the case law, therefore, vary as to the correct name. Under either name, however, the relevant part of the Act is commonly known as COBRA.

at 463–64, 478 (McDowell Dep. at 41–42, 56), Krawchison disputed Anderson's authority to act on behalf of either Krawchison or the Winton Road corporation at that point. R. 19, Ex. 2 (Krawchison Aff. ¶ 5). McDowell later asked Susan Porter, the office manager for the Winton Road clinic, if he could continue on the health insurance plan. J.A. at 309. Porter told him that she believed it was possible, but that she would check with Krawchison, which she did. J.A. at 310–11. On McDowell's last day of employment, Porter told him that his health insurance would be continued, J.A. at 466–67; the parties dispute whether Porter told McDowell that he would have to pay the premiums. J.A. at 467 (McDowell Dep. at 45); J.A. at 315 (Porter Dep. at 53). Porter stated in her deposition that she had so told him, and that she also had told him that he should contact Trisha Kincer, an employee of Michiana Corporation who handled the health insurance plan, to find out the amount of the premiums. J.A. at 315 (Porter Dep. at 53). McDowell never contacted Kincer.

Porter also gave McDowell a release to sign, waiving all claims related to his employment against Winton Road Chiropractic Center, Inc. or Krawchison individually. *See* J.A. at 23. After consulting with counsel, McDowell signed the release.

Neither McDowell nor Sidovar sought coverage for any medical treatment from September 1992 until early June 1993. At that time, Sidovar sought pre-approval for medical treatment and learned that she had no insurance coverage. McDowell and Sidovar filed suit against Krawchison in early 1994 alleging violation of COBRA in addition to several state claims; they later added the Winton Road corporation as a defendant. In July 1995, the district court issued an order denying Krawchison's motion for summary judgment with regard to his individual liability on the COBRA claim, denying the corporation's motion for summary judgment based on its contention that it was exempt from COBRA requirements, denying the defendants' motion for summary judgment based on the signed release, granting the plaintiffs' motion for partial summary judgment based on failure to provide notice of COBRA rights,

and granting the defendants' motion for summary judgment as to the allegation of an oral promise to provide continued benefits and as to the state law claims. J.A. at 240–62. After a hearing and stipulations, the court issued a final order in March 1996 entering judgment for the plaintiffs against both defendants. J.A. at 16. On appeal, the defendants base their challenge on the issues of COBRA notice, Krawchison's liability, and the effect of the release.

## II. ANALYSIS

On the issue of COBRA notice, the defendants appeal from a grant of partial summary judgment in favor of the plaintiffs. Our review is de novo. *Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1408 (6th Cir.1996). On the issues of Krawchison's individual liability and the release, the district court denied the defendants' motions for summary judgment, and later held against the defendants and entered judgment for the plaintiffs. Because the issues raised on appeal depend on matters of law, review of these issues is also de novo. *Delk v. Ford Motor Co.,* 96 F.3d 182, 190 (6th Cir.1996). We will affirm the decision of the district court if it is correct for any reason, including a reason not considered by that court. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985).

### A. COBRA Notice

COBRA imposes a statutory requirement that a plan administrator notify "any qualified beneficiary" of his or her right to continue health insurance coverage for up to eighteen months after a "qualifying event" (here, McDowell's termination). *See* 29 U.S.C. § 1166(a)(4) (notice requirement); 29 U.S.C. § 1162 (continuation coverage); 29 U.S.C. § 1163(2) (termination of covered employee as qualifying event). "Providing appropriate notice is a key requirement under COBRA.... If the administrator fails to provide that notice [of triggering of COBRA rights] to the qualified beneficiary, it may be bound to provide coverage to her." *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield,* 963 F.2d 1136, 1139 (8th Cir.1992). Both plaintiffs in this case were qualified beneficiaries

as defined by COBRA. 29 U.S.C. § 1167(3)(A) (defining "qualified beneficiary" as including the spouse of a covered employee, if the spouse was a beneficiary under the plan as of the day before the qualifying event); 29 U.S.C. § 1167(3)(B) (including a covered employee as a qualified beneficiary in the case of a termination other than for gross misconduct or reduction of hours).

■ It was undisputed that McDowell and Sidovar received no written notice of their COBRA rights. McDowell claimed that he was not informed of his rights; Susan Porter stated in her deposition that she did inform him that he would have to pay his own premiums to continue coverage. J.A. at 315 (Porter Dep. at 53). Because the defendants produced no other evidence to support Porter's version, the district court stated that the evidence was "in equipoise," and that the issue must be resolved against the party bearing the burden of proof—the defendants. J.A. at 255 (Dist. Ct. Op. at 16). Krawchison and the Winton Road corporation point out, however, that the case cited by the district court in support involved a judgment *after* a trial. *See Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723 (8th Cir.1995). In that case, the court looked to the evidence presented and held that the evidence could not meet the defendant's burden; therefore, the plaintiff prevailed. Here, the district court was viewing the evidence at the summary judgment stage, where the relevant inquiry is whether a material fact is genuinely disputed. As the defendants correctly contend, the district court, faced with conflicting testimony of witnesses, should have left the issue for the factfinding stage, where credibility could be determinative. *See Stanton,* 52 F.3d at 729 ("The district court determined that the evidence on this issue was in equipoise and resolved it against the party bearing the burden of proof. We are bound by the district court's assessment of the witnesses' credibility and its determination of weight of their testimony."). Had the evidence been in equipoise at the close of presentation of evidence, judgment for the plaintiffs would have been appropriate; however, testimonial evidence that is in equipoise as to a material fact precludes summary judgment.

■ Nevertheless, summary judgment in favor of the plaintiffs on the notice issue was appropriate on other grounds. *See Russ' Kwik Car Wash,* 772 F.2d at 216. Even taking Porter's version of her conversation with McDowell as true, the defendants presented no evidence that the plan administrator provided the required notice to Sidovar.

■ COBRA rights include the option to continue health insurance coverage equivalent to other qualified beneficiaries for at least eighteen months, at a cost of no more than 102 percent of the premium; the beneficiary must elect coverage within sixty days after the qualifying event, and may not be required to make the first premium payment before forty-five days after election. 29 U.S.C. §§ 1162, 1165. The statute itself does not prescribe the contents of the required notice. *See* 29 U.S.C. § 1166(a)(4) (In the case of a qualifying event, "the administrator shall notify ... any qualified beneficiary ... of such beneficiary's rights under this [part]."). Nevertheless, the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage. *See, e.g., Meadows v. Cagle's, Inc.,* 954 F.2d 686 (11th Cir.1992) (holding that the administrator had not provided sufficient notice to a spouse of an incompetent qualified beneficiary, where the spouse was not given a copy of the summary plan description, which would have made clear that the policy did not guarantee maximum coverage without the election of COBRA benefits; without the plan documents, the spouse could not have made an informed decision on behalf of the beneficiary). *See also Lincoln Gen. Hosp.,* 963 F.2d at 1139–40 (provision of a premium notice, an insurance card, and a benefits booklet was sufficient, because "[t]his information adequately informed [the beneficiary] of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage.").

■ Although the defendants contend that oral notice should be deemed sufficient, we need not decide that issue in this case. Even if the notice to McDowell by way of his conversation with Porter was legally suffi-

cient, it did not meet the statutory requirement as to Sidovar. She was entitled by statute to *her own notice* of her rights. The statute explicitly requires notice to be given to any qualified beneficiary, and defines a covered spouse to be a qualified beneficiary. 29 U.S.C. §§ 1166(a)(4), 1167(3)(A)(i). A covered spouse has his or her own rights under COBRA, which are *not* dependent on the covered employee's rights. For example, a covered spouse might choose to elect coverage while the covered employee does not, or they might choose different plans. 29 U.S.C. § 1165(2). The covered spouse often may be a qualified beneficiary where the covered employee is not: a covered spouse is specifically defined as a qualified beneficiary, 29 U.S.C. § 1167(3)(A)(i); a covered employee, on the other hand, is a qualified beneficiary only when he or she is terminated other than for gross misconduct or experiences a reduction in hours, 29 U.S.C. § 1167(3)(B). In fact, the definition of "qualifying event" focuses largely on the resulting loss of coverage to other family members; COBRA coverage for qualified beneficiaries is triggered not only when the covered employee is terminated, but also when he or she dies or becomes covered by Medicare, when the covered spouse is divorced or legally separated from the covered employee, when a dependent child ceases to be a dependent child, or when an employer from whom the covered employee retired files for bankruptcy. 29 U.S.C. § 1163.

Other COBRA provisions belie the defendants' contention that notice to the covered employee satisfies the administrator's obligation as to a covered spouse. For instance, § 1166(c) states that notification by the administrator "to an individual who is a quali-

fied beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made." In other words, the administrator is not required to notify each covered dependent child living at home, provided that the nonemployee parent, the spouse of the covered employee, is notified.[3] If the statute eliminates the need to notify certain qualified beneficiaries, but does *not* explicitly except notification of the spouse—and, in fact, relies upon such notification to provide notice to covered dependents—then we cannot read the statute to eliminate the need to notify a covered spouse.

The statute also provides that "any election of continuation coverage by a qualified beneficiary ... shall be deemed to include an election of continuation coverage on behalf of any other qualified beneficiary who would lose coverage under the plan by reason of the qualifying event. If there is a choice among types of coverage under the plan, each qualified beneficiary is entitled to make a separate selection among such types of coverage." 29 U.S.C. § 1165(2). Perhaps significantly, this provision acts only to preserve coverage for other qualified beneficiaries; it does not, for instance, treat one beneficiary's decision not to continue coverage as eliminating the other beneficiaries' option to elect, and in fact it allows beneficiaries to elect different types of coverage. This election provision is useful as an analogy—it allows one beneficiary to be deemed to have acted on others' behalf only in order to maintain coverage, and it explicitly provides for a separate election by each beneficiary; it does not allow beneficiaries to be treated as a unit for purposes of denying coverage.[4] Similarly, we do

---

**3.** At oral argument, defendants' counsel erroneously contended that this provision requires separate notice to the covered employee's spouse if other qualified beneficiaries (i.e., children) live with the spouse, and that § 1166(c) shows that no separate notice to the spouse is necessary in the absence of those other qualified beneficiaries. The statute does not, however, require notice to the spouse where there are covered children, but rather allows the plan administrator to forgo separate notice to the children. It clearly does *not* indicate that separate notice to the spouse is required because dependent children are involved *or* that such separate notice (if the spouse

is a qualified beneficiary) is not required absent children.

**4.** Notably, a proposed Treasury regulation containing a detailed explanation of COBRA, in question-and-answer format, made precisely this point. Prop. Treas. Reg. § 1.62–26, Q & A–37 at Ex. 1, 52 Fed.Reg. 22716, 22730 (1987) (explaining that although the terminated employee can elect COBRA continuation coverage for himself or herself and the spouse, thereby binding the spouse to that election, the employee cannot decline coverage on the spouse's behalf) ("Thus, if [the employee] does not elect COBRA continu-

not interpret the statute's notice provisions as treating the covered employee and his or her spouse as a unit for notice purposes, such that the plan administrator is absolved of its duty to notify the spouse.

Taken together, §§ 1165(2) and 1166(c) indicate that qualified beneficiaries are to be treated separately for COBRA purposes except in these specifically-defined exceptions, both of which operate in favor of coverage. Moreover, these two provisions strongly suggest that had Congress intended notice to a covered employee to serve as notice to that employee's covered spouse as well, it would have so provided. Therefore, we hold that the plan administrator was required to provide Sidovar with sufficient notice of her rights, and that failure to do so violated COBRA.

We note that case law from other courts also supports our conclusion that notice to a covered employee does not fulfill the statutory requirement of notice to a covered spouse. The Seventh Circuit has held that because the duty to notify does not depend on the employee's knowledge, "[l]ikewise, an employee's knowledge cannot affect his spouse's right to notification or election." *Mlsna v. Unitel Communications, Inc.*, 41 F.3d 1124, 1129 (7th Cir.1994) (holding that even though the covered employee knew of his rights and chose not to elect coverage, and his wife obtained coverage through a different provider, the court could not infer that she would have declined continuation coverage if she had received the required notice); *see also Burgess v. Adams Tool & Eng'g, Inc.*, 908 F.Supp. 473, 478 (E.D.Mich.1995) ("[N]otice must be provided to all qualifying beneficiaries and not just to the employee.") (citations omitted). Cases cited by the defendants do not support a different conclusion. In *Lincoln General Hospital*, the Eighth Circuit held that the plan administrator had satisfied the notification requirement *not* because the employer gave the COBRA notice form to the covered employee to deliver to his ex-wife (the finalization of the divorce was the qualifying event, triggering the ex-wife's CO-

BRA rights), but because the insurer sent an identification card, premium statement, and benefits information to the ex-wife herself. 963 F.2d at 1140. The Eleventh Circuit's holding in *Meadows* does not support the defendants' argument; although the court held sufficient a notice that was mailed to the covered employee not at her last known address, but at her husband's last known address, in that case the employee was in a persistent vegetative state, her last known address was the medical facility in which she was hospitalized, and it was clear that her husband was handling her insurance coverage on her behalf. *See* 954 F.2d at 688. Though the court did not explain its reasoning for holding the notice satisfactory despite its mailing to an address other than the beneficiary's last known address (as required by the plan in that case), *see id.* at 688 n. 2, the factual situation suggests that the court considered the beneficiary's inability to make an informed decision, and her spouse's need to make the decision for her. Nothing in *Meadows* suggests that notice to the spouse of a qualified beneficiary, as is claimed in this case (i.e., notice to McDowell), is a satisfactory substitute for notice to the beneficiary herself (Sidovar).

The defendants argue that if McDowell did in fact communicate the information given to him to Sidovar, Sidovar should be deemed to have been notified. Even if the information given to McDowell was sufficient to provide him with the required notice, this argument fails. As the Seventh Circuit stated in *Mlsna*, "[a]n employee's knowledge of his COBRA rights does not relieve the plan administrator of its notification duties.... [T]he statute does not make the duty to notify dependent upon an employee's knowledge...." 41 F.3d at 1129 (citing *Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 409 (E.D.Ark.1992)). Likewise, any qualified beneficiary's knowledge of his or her rights does not affect the statutory duty to notify that beneficiary. The defendants ask this court to hold that McDowell's purported understanding of his rights re-

ation coverage on behalf of the spouse, the spouse must still be allowed to elect COBRA

continuation coverage.").

lieved the plan administrator of its statutory obligation to notify Sidovar of her rights as well.[5] Defendants urge this court that to require actual notice to Sidovar would turn COBRA into "a technical labyrinth"; to the contrary, we believe that the clear language of the statute not only mandates actual notice, but establishes a simple requirement that will not mire plan administrators and courts in fact-specific inquiries as to whether a covered employee actually notified the covered spouse, whether that notification adequately informed the spouse of his or her rights, and so on.

## B. Krawchison's Liability

The district court denied Krawchison's motion for summary judgment as to his individual liability; the court held that under ERISA's definition of "employer," Krawchison was McDowell's employer for COBRA purposes, and that deference to the corporate form was unwarranted in light of the purposes of ERISA and COBRA, particularly since Krawchison did not hold corporate meetings and obtained the health insurance coverage in his own name. In the final order, the court entered judgment against both the Winton Road Chiropractic Center, Inc. and Krawchison individually. Krawchison contends that the district court erred in imposing individual liability.

■ The district court analyzed the issue of liability incorrectly, basing its imposition of personal liability largely on its holding that Krawchison was McDowell's employer. We note that Krawchison is incorrect in contending that "employer" is not defined for COBRA purposes and must be afforded its ordinary meaning. Though Krawchison points out that "employer" is not defined "in COBRA," he overlooks the fact that COBRA was merely an amendment to ERISA. "Employer" is defined in ERISA, and the definition applies to the entire subchapter, which includes COBRA. *See* 29 U.S.C. § 1002 (providing definitions "[f]or purposes of this subchapter"); Pub L. No. 99–272, § 10002(a), 100 Stat. 227 (1986) (adding the COBRA coverage provisions as Part 6 at the end of subtitle B of title I of ERISA (title I of ERISA is codified as subchapter 1 of chapter 18 of Title 29)). Though COBRA contains its own definitions, applicable only to that part, *see* 29 U.S.C. § 1167, it is also part of ERISA and subject to the definitions in § 1002. Therefore, the district court stated the correct definition of "employer": "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan...." 29 U.S.C. § 1002(5). Nevertheless, the district court misapplied the definition.

■ Krawchison did meet the ERISA definition of an employer. Even assuming that he did not act directly as an employer, he clearly did act "indirectly in the interest of" the Winton Road corporation with regard to the health plan. He obtained the insurance plan for the clinic, along with the other clinics—not merely as an officer performing an administrative function, but clearly as a figure central to all of the clinics. The fact that Porter consulted him about McDowell's COBRA coverage, rather than asking someone at the insurance company or at Michiana also shows that he made decisions regarding the plan on behalf of (and in the interest of) the Winton Road corporation. Krawchison therefore acted in the interest of the Winton Road corporation with regard to the health plan to an extent that met the ERISA definition of "employer."

■ The fact that Krawchison could be considered the employer in his actions regarding the plan, however, does not justify imposition of individual liability. In *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), the court held that definitions of "employer" for purposes of Title VII and

---

5. Such a holding would be especially inappropriate where, as here, the notice to the covered employee was oral. Although we do not here decide whether oral notice can be sufficient, such notice would lead to special problems in the relaying of information to a third party. If this court were to adopt the defendants' position, a covered spouse's statutory right to notice could be satisfied by the covered employee's oral explanation of his or her own understanding of COBRA rights, as those rights were orally imparted to him or her by the plan administrator. Given the purpose of COBRA to allow beneficiaries to make informed decisions about coverage, we will not relegate COBRA notice to a second- or third-hand interpretation.

the ADEA that included agents were intended to impose respondeat superior liability on employers, not to hold those acting on behalf of employers personally liable. This circuit recently came to the same conclusion regarding Title VII. *Wathen v. General Elec. Co.,* 115 F.3d 400, 404–06 (6th Cir.1997). The definition of "employer" under ERISA is worded such that it appears to have the same intended purpose. A broader interpretation might allow a court to hold an individual employee who merely processes health insurance questions and paperwork personally liable for a plaintiff's medical costs under CO-BRA; Congress most likely did not intend such a result. Holding Krawchison individually liable on the basis of the ERISA definition, therefore, was error. *See also Rockney v. Blohorn,* 877 F.2d 637, 640–42 (8th Cir. 1989) (rejecting a rule that corporate officers could be held personally liable as "employers" under ERISA).

■ Nevertheless, the district court reached the correct result as to Krawchison's liability. COBRA clearly places the burden of providing notice on the "administrator." *See* 29 U.S.C. §§ 1166(a)(4) ("the administrator shall notify"), (c) (captioned "Rules relating to notification of qualified beneficiaries by plan administrator"). "Administrator" is defined for ERISA purposes as (i) the person specifically designated as the administrator by the terms of the plan instrument; (ii) if the instrument does not designate an administrator, the plan sponsor; or (iii) if no administrator is designated and a plan sponsor cannot be identified, a person prescribed by the Secretary in regulations.

29 U.S.C. § 1002(16)(A). A "plan sponsor," in turn, is the employer, in the case of a plan established or maintained by a single employer, or "the association, committee, joint board of trustees, or other similar group of representatives" of the parties who establish or maintain a plan jointly. 29 U.S.C. § 1002(16)(B). In this case, there is no evidence in the record, and neither party has contended, that Medical Benefits Mutual Life Insurance Company was designated the plan administrator.[6] In fact, defendants' counsel conceded at oral argument that no plan administrator was designated in the plan documents.[7] Moreover, all parties appear to have assumed that the responsibility for providing notice, and the liability for any failure to provide notice, rested on McDowell's employer, with no suggestion that Medical Benefits Mutual Life Insurance Company was in any way responsible. Under 29 U.S.C. § 1002(16)(A)(ii), therefore, in the absence of a designated administrator, the plan sponsor was the plan administrator for purposes of ERISA and COBRA.

The evidence indicates that Krawchison himself was the plan sponsor. If the plan had been established and maintained solely by the Winton Road corporation for its employees, the Winton Road corporation would be the plan sponsor. *See* 29 U.S.C. § 1002(16)(B). The medical benefits plan at issue, however, was not established or maintained by the Winton Road corporation, and its coverage was not limited to employees of that corporation. Rather, the separate clinics owned by Krawchison shared a common health plan; by definition, the plan sponsor

---

**6.** We note that the record does contain an amendment to the Medical Benefits Mutual Group Insurance Certificate of Coverage that could be construed as placing the burden of arranging COBRA continuation coverage on the participant's employer, rather than on the insurance company. R. 19, Ex. 3 (summarizing requirements for a covered employee to qualify for extension of benefits following termination of employments; stating, "If you choose to continue your group coverage, you should make these arrangements with your Employer when you receive your notice of termination.").

**7.** Defendants' counsel repeatedly asserted that Susan Porter was the plan administrator (though no one was officially designated as such). Porter's own undisputed testimony, however, was

that she did not handle employees' health coverage. J.A. at 292–93 (Porter Dep. at 30–31); J.A. at 295–96 (Porter Dep. at 33–34); J.A. at 353–54 (Porter Dep. at 91–92). Furthermore, she worked mainly for the Winton Road corporation, and performed some clerical work for two other clinics, *see* J.A. at 277, 286–87, but there is no evidence to suggest that she was involved with all of the clinics covered by the plan. Even if we were to accept counsel's assertion that Porter "administered" the plan, we note that the term "plan administrator," as used in ERISA and CO-BRA, does not refer merely to a person who performs clerical administration related to a benefit plan, but rather to the entity charged with overall management of the plan.

of such a plan is the committee or similar group of representatives of the member employers. 29 U.S.C. § 1002(16)(B).[8] In this case, Krawchison is the only entity that could reasonably be deemed the plan sponsor under the statutory definition. He was the sole owner and officer of most of the clinics, and the single common link among all of the clinics. In addition, rather than obtaining insurance separately for each clinic, he decided to aggregate the clinics' work forces in the interest of obtaining a cheaper rate. Significantly, he established the plan under his own name; although the plan was in the name of the "John R. Krawchison Corporation," Krawchison conceded that no such corporation existed. *See* J.A. at 381 (Krawchison Dep. at 14). In fact, his own statements indicated that he did not seek to use a corporate name to obtain the policy; he simply wanted to aggregate the number of employees, and someone else created the corporate variation of his name. J.A. at 380–82 (Krawchison Dep. at 13–15); *see also* J.A. at 420 (Krawchison signed his own name (without "Corporation") as the "Employer's Legal Name" on the employer application to obtain a health insurance plan).[9] The very fact that he chose to cover the employees at all of his separately-incorporated clinics on a single policy, and that the policy was put under his own name, rather than any clinic-employer's name, justifies holding him to be the plan sponsor.

Moreover, Krawchison's own evidence suggested that he made decisions with regard to the administration of the plan. When McDowell asked whether he could continue coverage, Porter, the office manager for the Winton Road clinic, did not turn to Medical Benefits Mutual Life Insurance Company for the answer, or even to the Michiana Corporation, which handled premium payments and other administrative functions for the separate clinics.[10] Instead, Porter told McDowell that she would ask Krawchison; she did in fact ask Krawchison, who told her that McDowell could maintain coverage if he paid his own premiums, and Porter relayed that information to McDowell. J.A. at 309–15 (Porter Dep. at 47–53).

■ For the above reasons, we hold that Krawchison is liable as the plan sponsor and thus as the administrator responsible for the failure to notify Sidovar of her COBRA rights, and therefore that the district court properly held him individually liable.[11] Because there was no evidence that the Winton Road corporation established or maintained the benefits plan, it cannot be deemed the plan sponsor under the statute, despite the fact that it was McDowell's employer; the Winton Road corporation therefore cannot be held liable for the failure to provide COBRA notice.

---

**8.** We note that although the defendants argued at summary judgment that each clinic must be considered separately for COBRA purposes, the district court held that the clinics should be considered as a single employer for purposes of determining whether COBRA applied. J.A. at 249–52. The court relied in part on 29 U.S.C. § 1002(40)(B), which states that two or more businesses "shall be deemed a single employer," for purposes of determining whether a plan is a "multiple employer welfare arrangement" ("MEWA"), if they are "under common control"; the district court held that the clinics were under the common control of Krawchison (i.e., they did not constitute a MEWA). The defendants do not challenge that holding on appeal. That holding, however, does not negate our analysis under § 1002(16)(B)(iii), which defines the "sponsor" of a plan established and maintained by two or more employers, because the inquiries under the two subsections are not the same. Consideration as a single employer based on "common control" is only for the purposes of the subsection defining a MEWA. *See* 29 U.S.C.

§ 1002(40)(B); *see also* 29 U.S.C. § 1002(37)(B) (similarly treating businesses under common control as a single employer for purposes of the definition of a multiemployer plan).

**9.** We also note that Krawchison used the Winton Road address as the address of the employer, John R. Krawchison Corporation, and listed three other (separately incorporated) clinics on the application as "Branch Office[s], Subsidiar[ies], or Affiliate[s]". J.A. at 418.

**10.** Porter stated that she did contact Trisha Kincer at Michiana later, to tell Kincer that McDowell would be calling to find out the amount of his premiums, *see* J.A. at 319–20 (Porter Dep. at 57–58), but that occurred only after she had consulted Krawchison.

**11.** Because we hold that Krawchison was directly liable as the plan administrator under 29 U.S.C. § 1002(16)(A), we need not address the district court's veil-piercing analysis.

## C. The Effect of the Release

■ The defendants contend that the plaintiffs' COBRA claims are barred by the release that McDowell signed, which waived all claims against the Winton Road corporation and Krawchison "directly or indirectly relating" to his employment. *See* J.A. at 23. We need not decide that issue, however, because we hold that the release signed by McDowell could not have waived Sidovar's COBRA rights.[12] The defendants argue that the release barred Sidovar's COBRA claim as well as McDowell's, since her right to coverage was dependent on his right to coverage, because there was no "qualifying event" as to Sidovar. A simple reading of the statute shows that the defendants are clearly mistaken. *See generally supra* Part II.A (discussing the rights of qualified beneficiaries independent of their spouses, and the statute's distinct definitions of and provisions for qualified beneficiaries and covered employees). A rule by which the spouse's COBRA rights would derive from the employee's rights could apply, if at all, only to cases where the covered employee himself or herself was a qualified beneficiary. For that reason, the defendants' reading of the statute is nonsensical; it would eradicate all COBRA coverage for nonemployees (i.e., spouses and families) triggered by the qualifying events listed in 29 U.S.C. § 1163(1), (3)-(5)—all but

§ 1163(2) and (6).[13] Under the clear language of the statute, Sidovar, as a spouse of an employee, and as a beneficiary under the plan as of the day before the qualifying event of McDowell's termination, was a qualified beneficiary entitled to COBRA coverage. *See* 29 U.S.C. § 1167(3)(A). Her rights were in no way contingent on McDowell's.[14] Therefore, even if McDowell did waive his COBRA rights, he did not—and could not—waive Sidovar's.

## III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court awarding damages to the plaintiffs against Defendant Krawchison, and **REVERSE** the judgment against Defendant Winton Road Chiropractic Center, Inc. We **REMAND** to the district court for further proceedings consistent with this opinion.

**12.** The damages in this action were based entirely on Sidovar's medical costs, and not on any damages resulting from McDowell's lack of coverage, as defendants' counsel conceded at oral argument.

**13.** A covered employee who dies (*see* 29 U.S.C. § 1163(1)), or who continues working for the employer but divorces his or her covered spouse (29 U.S.C. § 1163(3)) or becomes entitled to Social Security benefits (29 U.S.C. § 1163(4)), does not have COBRA rights to continuation coverage; only a covered employee who is terminated (for other than gross conduct), whose hours are reduced, or who has retired from an employer that files for bankruptcy is entitled to COBRA coverage. *See* 29 U.S.C. § 1167(3)(B) (defining "qualified beneficiary" to include the covered employee where the qualifying event is a termination or reduction of hours as described in § 1163(2)); 29 U.S.C. § 1167(3)(C) (defining "qualified beneficiary" to include the covered employee where the qualifying event is a bankruptcy proceeding with respect to the former employer of the re-

tired covered employee, as described in § 1163(6)). In addition, a covered employee's own coverage is not affected by his or her dependent child's ceasing to be a dependent child. *See* 29 U.S.C. § 1163(5). Thus, the defendants' interpretation of the statute as requiring other qualified beneficiaries to derive their COBRA rights from the COBRA rights of the covered employee is erroneous.

**14.** The only case the defendants cite for their position that McDowell could have waived Sidovar's rights is an unpublished opinion from another circuit that, as the plaintiffs point out, does not even state whether the claims brought by the employee's spouse (who sued both individually and as the administratrix of her late husband's estate), which the court deemed barred by a release signed by the employee, were based on her own COBRA rights or on his. *Laymon v. Kroger Co.*, No. 90–3115, 1991 WL 15431 (4th Cir. Feb. 12, 1991). We will not read a vague, unpublished opinion from another circuit to trump the clear language and the very purpose of the statute.