**William S. JONES, Jr., Plaintiff,**

v.

**OFFICEMAX, INC., et al., Defendants.**

**No. 2: 97 CV 720 K.**

United States District Court,
D. Utah,
Central Division.

March 1, 1999.

958

David A. Westerby, Kirton & McConkie, Salt Lake City, UT, for William S. Jones, plaintiff.

Mary Anne Q. Wood, Joi Gardner Pearson, Wood Crapo LLC, Salt Lake City, UT, for Officemax, defendant.

## ORDER

KIMBALL, District Judge.

Before the Court is Defendant Office-Max, Inc.'s Motion for Summary Judgement.

### BACKGROUND

At the time of the events at issue, Plaintiff William Jones, Jr., ("Jones") had been employed by Defendant OfficeMax, Inc. ("OfficeMax") for over six years and had recently been promoted to the position of store manager. Defendants Aetna Life and Aetna Healthcare [1] were plan sponsors and administrators of a group health plan that provided benefits to OfficeMax employees. Six weeks after his promotion, on August 17, 1996, Jones was admitted to the University of Utah Neuropsychiatric Institute for seven days for treatment of drug abuse, bipolar disorder, and a neck abscess. Jones informed his district manager, Jon Lauritzen, where he was, but intentionally withheld the fact that he was receiving treatment for drug abuse. After his release he initially continued outpatient visits with his treating physician, Dr. Robert Birch.

On August 26, 1996, Jones called Lauritzen and talked to him about returning to work. Based on that conversation, Jones felt that Lauritzen was asking him to return as assistant manager and that Lauritzen did not believe Jones could then handle the stress of being the store manager. Jones recounted their conversation as follows:

> And he said, "William do you think it might be better if you maybe stepped down to a lower position?" And I told him, "Absolutely not." I said, "Jon, I've worked really hard to get into this spot. I do a very—I do very well at what I do

1. Defendants Aetna Life and Aetna Healthcare were not named in Plaintiff's original complaint, and they have not answered Plaintiff's amended complaint, which was filed on September 30, 1998, nor does the file contain any indication that they have been served. Accordingly, Plaintiff's action against them is dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

and I'm a very go[od] manager. And as my record shows with OfficeMax. And I would choose not to step down and I would like a shot at this. And I am starting on a new clean sheet".

And he said, "Well, okay then." And he says, "Be in my office Tuesday and we'll go over it before you go back into your store."

*Deposition of William S. Jones, Jr., page 33.*

On August 30, 1996, he returned to work as store manager. Jones asserts that Lauritzen immediately placed pressure on him by giving him unreasonable assignments, which he nevertheless accomplished. Specifically, Lauritzen sent Jones two memos that itemized problems in his store that needed correction. One of the memos included a sentence in which Lauritzen wrote: "It is my sincere hope that the medical treatment you recently received will result in your ability to change your approach to business and your subordinates."

Jones worked after-hours with two non-employee friends to fix the problems, a fact OfficeMax became aware of after an assistant manager noticed that doors had been left unlocked and irregularities in the alarm system.

On September 13, 1996, Jones was discharged for four stated reasons: (1) allowing nonemployees to work in the store overnight; (2) leaving the interior vestibule doors unlocked after-hours, (3) failing to properly set, or "forcing" an alarm (that is, activating an alarm despite the indication of a breach of security, such as an unlocked door), and (4) leaving the cash office door unlocked.

Jones alleges, and OfficeMax does not dispute for purposes of this motion, that he was not notified that he could purchase continuation coverage for his health ex-

penses. He testified that without insurance, he could not afford the services and medications he had been receiving and tried to cope without them. He claims that his loss of employment and loss of insurance exacerbated his depression and hindered his reemployment.

OfficeMax first learned that Jones claimed that he had not received notice of continuation coverage in May, 1997, and promptly caused notice to be sent. Shortly thereafter, OfficeMax informed Jones' lawyer that it would pay the premium that would otherwise be due for the period between the date of Jones' termination and the date he received notice. With coverage thus reinstated, however, Jones testified that he nevertheless did not resume the treatments he had previously abandoned because, having endured the difficulty of weaning himself off of such treatments once already, he did not want to do so again.

Jones asserts claims under the Employee Retirement Income Security Act ("ERISA") and the Comprehensive Omnibus Budget Reconciliation Act ("COBRA") for failure to give timely notice of continuation coverage and the Americans with Disabilities Act ("ADA") for discrimination on the basis of a perceived disability.[2]

### STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-

---

**2.** Jones' amended complaint also states a claim under the Family and Medical Leave Act ("FMLA") for failure to return Jones to an equivalent position of employment and claims under the FMLA and ADA for opposing practices made unlawful by these statutes. Jones now concedes that such claims are subject to dismissal and, accordingly, OfficeMax's motion for summary judgment is granted with respect to them.

movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

## DISCUSSION

### A. Jones' ERISA/COBRA Claim.

COBRA requires that employers allow former employees the opportunity to continue health care coverage under the employer's plan, at their own expense, if a qualifying event, such as termination of employment, occurs. 29 U.S.C. §§ 1161(a) and 1163. When an employer that is also a plan administrator (as here) terminates an employee, that employer must notify the terminated employee of his COBRA rights within 44 days of termination. 29 U.S.C. §§ 1166(a)(2) and (c). The duty to notify arises by statute and is independent of a beneficiary's actual knowledge of his rights. *McDowell v. Krawchison*, 125 F.3d 954, 960 (6th Cir.1997) *(citing Mlsna v. Unitel Communications, Inc.*, 41 F.3d 1124, 1129 (7th Cir.1994)).

COBRA contains no specific requirements as to the manner in which notice must be given, but in the Tenth Circuit, "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir.1997) *("Smith I")*. Generally speaking, the notice must contain sufficient detail about the costs and benefits of coverage to allow the beneficiary to make an informed decision whether to elect coverage. *McDowell*, 125 F.3d at 958.

A court has the discretion to hold an employer that fails to provide the required notice personally liable in the amount of up to $100 per day from the time of the failure, "and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(3). Such "other relief" has been interpreted to include an award of medical expenses (less deductibles and premiums) when a plan failed to give the required notice upon termination of employment in a context where the terminated employee incurred medical expenses. *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196 (10th Cir.1998). However, it has never been interpreted in a context where a terminated employee forgoes medical care for lack of insurance coverage and then seeks to recover for the resultant deterioration to his health, as Jones does in this lawsuit.

OfficeMax argues that such damages are not recoverable under ERISA, which permits recovery only for the benefits promised under the plan, that is, restitutionary remedies. In support of its argument, OfficeMax cites a Supreme Court opinion clarifying that the civil enforcement provisions of ERISA are not designed to be punitive, but represent a careful balance between "the need for prompt and fair claims settlement procedures" and "the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) *(holding that employee's common-law breach of contract and tort claims against insurance company were preempted by ERISA's exclusive civil enforcement scheme).* In *Pilot Life*, the Supreme Court held that pursuant to such provisions, "Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Id.* at 53, 107 S.Ct. 1549.

Jones, on the other hand, argues that although COBRA utilizes ERISA's enforcement provisions, COBRA implicates different concerns and that there is no reason why "such other relief" under

§ 1132(c) could not encompass actual damages suffered from the loss of insurance coverage.[3] While COBRA does address unique concerns, Jones has not explained how these concerns affect the balance of interests described by the Supreme Court in *Pilot Life*. In the view of this Court, the public interest in encouraging employers to provide benefits remains equally strong in the COBRA context. Accordingly, this Court declines to expand the scope of damages recoverable under § 1132 as Jones desires.

Nonetheless, such damages could be considered by a court in determining whether to assess a penalty against an employer under § 1132, as this Court does in this case. OfficeMax asserts that no penalty should be assessed because OfficeMax acted in good faith and because Jones' drug use violated OfficeMax policy, for which Jones could have been terminated had OfficeMax been aware of it.

█ This Court cannot find that Office-Max is within the "good faith" safe harbor. That safe harbor applies when an employer attempts to notify an employee of all of his or her COBRA rights, but gives notice that is inadequate in some respect. In contrast, OfficeMax has no evidence that it provided any notice whatsoever. *See, Smith I*, 128 F.3d at 1383 *(noting administrator bears burden of proving adequate notice was given)*. In *Smith I*, for example, an employer gave a terminated employee oral notice of his continuation rights, but did not advise him of the specific amount of the monthly premium. The Court of Appeals for the Tenth Circuit found that this shortcoming was not alone sufficient to invalidate the notice inasmuch as the employer did advise the employee of the approximate range of the monthly premium. *Id.* at 1384. Continuing on to analyze other aspects of the notice provided,

the court ultimately found the notice deficient in omitting to cover the election rights of the terminated employee's covered spouse. *Id.*

The fact that Jones could have been terminated for his drug abuse had Office-Max known about it is also an insufficient reason not to assess a penalty in the present circumstances. Given that OfficeMax did not perceive that Jones' drug abuse affected his work performance and that Jones voluntarily sought treatment, this Court is not convinced that OfficeMax actually would have terminated Jones even if it had been aware of his drug problem, and, additionally, this Court is leery of creating an incentive for employers to accuse employees of gross misconduct after-the-fact.

For these reasons, it is the determination of this Court to assess a penalty against OfficeMax in the amount of $10 per day for the period commencing 44 days after September 13, 1996, and ending May 27, 1997, the date notice was sent.[4]

## B. Jones' ADA Claim.

A plaintiff like Jones, who lacks direct evidence of discrimination on the basis of disability, must establish a prima facie case by establishing:

1. that he is a disabled person within the meaning of the ADA;

2. that he is qualified, that is, able to perform the essential functions of the job, with or without reasonable accommodation; and

3. that the employer terminated his employment under circumstances that give rise to an inference that the termination was based on his disability.

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). "In the summary judg-

---

3. Jones argues further that any such damages must be determined by a jury. This Court rejects that argument as contrary to the plain language of § 1132, which clearly commits such matters to the court's discretion.

4. Calculated accordingly, Jones is entitled to judgment against OfficeMax in the amount of $2,110 (211 days × $10 per day).

ment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case." *Id.* The burden then shifts to the employer to set forward sufficient nondiscriminatory reasons for his termination; then back to the plaintiff to show that the employer's proffered reasons were pretextual. *Id.*

■ A person is a disabled person under the ADA, among other ways, when that person is not impaired, but is perceived as having a disability. To prevail on a perceived disability claim, the plaintiff must present evidence showing that his employer perceived him as being unable to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills, and abilities. *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 904 (10th Cir.1997) (*interpreting* 42 U.S.C. § 12102(2)(C)) (*"The statutory requirement that the employer regard the employee as having a substantially limiting impairment indicates that [the] employer regards an employee as substantially limited in the ability to work when the employer regards the employee's impairment or perceived impairment as foreclosing generally the type of employment involved."*).

Jones advances a two-step argument to support his position that OfficeMax perceived him as suffering from a disability that limited his ability to perform a class of jobs. In the first step, Jones advances the opinion of his expert witness, John T. Matthews, that "manager," or more specifically, "managerial and administrative occupations," is a recognized class or category of jobs, which accounted for 72,310 positions in Utah in 1996. On that basis, Jones asserts that "manager" constitutes a "class of jobs" under the ADA. .

In the second step, Jones asserts that OfficeMax's perception that Jones suffered from a disability that limited his ability to hold a position within the manager class is demonstrated by two facts: (i) Jones' telephone conversation with Lauritzen in

which Lauritzen offered him a position as assistant manager and (ii) the memo in which Lauritzen offered his hope that Jones' medical treatment would improve his ability to manage his store.

OfficeMax responds first by asserting that, as described by Jones' expert, the class of "managers" encompasses the position of assistant manager, which Jones was offered, negating the contention that OfficeMax perceived Jones as being unable to work as a manager. OfficeMax responds second by asserting that the conversation between Jones and Lauritzen where Lauritzen offered Jones an assistant manager slot shows only that OfficeMax was attempting to accommodate Jones if Jones desired such accommodation and that the statement in the memo shows only an awareness that Jones had received medical treatment.

■ The contentions of OfficeMax are well taken. Jones' attempt to classify "store manager" in a different class than "assistant manager" is artificial and inconsistent with *Sutton*, which rejected the attempt of two plaintiffs to define a class of jobs that would include the position of "pilot" but not the position of "co-pilot." It is also inconsistent with Jones' own complaint, which characterizes his previous positions with OfficeMax—positions that were below the position of store manager—as "managerial." This Court also agrees that the two instances cited are insufficient to meet Jones' burden to put forward some evidence on the basis of which a reasonable fact finder could conclude that OfficeMax actually held the perception that Jones was disabled from working as a manager.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. However, Jones is awarded a penalty pursuant to 29 U.S.C. § 1132(c) in the amount of $2,110. Judgment against

OfficeMax shall be entered in that amount. Each side shall bear his or its own costs.